Russell ARMENTROUT and Marion Parker, as individuals, and as representatives of the qualified voters of the Fourth Ward of the City of Louisiana, Missouri, Appellants,

v.

John E. SCHOOLER, Mayor, R. D. Hamlett, Junior Clark, Holman Snead, Merle Scranton, Frank Ince, Joe Carr, Robert Price, John Kitson, as Councilmen, Mrs. F. A. Hallows, as City Clerk, and the City of Louisiana, Missouri, a municipal corporation, Respondents.

No. 51856.

Supreme Court of Missouri, Division No. 1.

Dec. 14, 1966.

Edward A. Glenn, Louisiana, Mo., William C. McIlroy, Bowling Green, for appellants.

Fred Wilkins, Louisiana, Mo., for respondents.

HOUSER, Commissioner.

Two residents, taxpayers and duly qualified voters of the fourth ward of the City of Louisiana brought this action against the city, its mayor, council and clerk to declare invalid a city ordinance dividing the city into four wards and fixing the geographical boundaries thereof; to require defendants to take a census of the inhabitants of the city and reapportion the wards substantially on an equal population basis; to enjoin further municipal elections for members of the city council on the basis of the existing wards, and upon defendants' failure to do these things to institute contempt proceedings and proceed to reapportion the wards by judicial decree. Plaintiffs claim that "The malapportionment between the wards of the City of Louisiana has resulted in a debasement or dilution of the weight of Plaintiffs' vote as voters of the Fourth Ward and a denial of suffrage to Plaintiffs, constituting an invidious discrimination against Plaintiffs' constitutional right to full, equal and effective participation and representation in the political processes of their municipal government under the equal protection clause of Section 1 of the Fourteenth Amendment to the Constitution of the United States and Article I, Section 2 of the Constitution of the State of Missouri. The malapportionment aforesaid and the discrimination created thereby infringes Plaintiffs' rights under Article I, Section 25 of the Constitution of the State of Missouri constituting an interference to prevent free exercise of Plaintiffs' right of suffrage." The case was submitted to the circuit court on the pleadings and two sets of interrogatories. The court dismissed the petition for failure to state a cause of action, and plaintiffs appealed. Defendants filed no brief on appeal and make no effort to uphold the judgment below.

The city was incorporated as a special charter city by legislative act passed March

14, 1849. Section 4 of Article I of Laws 1870, Adjourned Session, p. 386, provided that "The city of Louisiana, hereby created, shall be divided into four wards by the city council, so as to include, as near as may be, the same number of free white male inhabitants in each ward, and the city council shall have power to alter or change the boundaries of said wards from time to time, as they may see fit, or to increase the number of said wards, (having regard to the number of free white male inhabitants as aforesaid), so that each ward shall as aforesaid have as near as may be an equal number of such inhabitants." In 1949 the city was reorganized as a city of the third class under the provisions of § 72.030.[1] Section 72.110 provides:

"The jurisdiction of any city which shall be reorganized under this chapter shall not in anywise be affected or changed in consequence of such reorganization, but such limits, wards and boundaries shall remain after such reorganization the same as before such reorganization; and all laws or parts of laws or ordinances, not inconsistent with the provisions of the chapter dealing with the class into which such city is reorganized, which were operative in such city prior to its reorganization, shall continue to be in force until repealed or otherwise changed by ordinance."

Section 115 of the 1950 revision of the city ordinances divides the city into four wards and fixes their geographical boundaries. The council consists of eight members, two of which are elected from each ward. One councilman is elected from each ward each year for a 2-year term. The division provided by Section 115 has existed and continued without change for more than 75 years. During that time substantial land areas have been annexed to the city and have been attached to the fourth ward. The population of the third and fourth wards has grown, while that of the first and second wards has declined. As a result a gross malapportionment has been created among the several wards.

The mayor and councilmen and their predecessors "since the memory of man runneth not to the contrary" have failed and refused to reapportion the several wards and to provide adequate census data by which such reapportionment could be intelligently and properly made. Accurate figures demonstrating the exact population imbalance in the several wards are not presently available. The federal census does not break down the population of the city into wards. The fourth ward, however, regularly casts from two to three times as many votes at city elections as does the second ward and twice as many votes as are cast in the first ward. In the last four elections for councilmen the average number of votes cast in the several wards was as follows: first, 215; second, 152; third, 328; fourth, 482. The 1962–63 census of public school students showed that the following number of students resided in the various wards as follows: first, 92; second, 126; third, 292; fourth, 236. Over the last eleven years residential water connections installed in the various wards have been as follows: first, 16; second, 27; third, 81; fourth, 109. There is no voter registration law applicable to voters in the city, and there is no voter register. The residents of the city have no right of initiative.

It is judicially admitted and established by the answer of the city and its defending officials that there is a gross malapportionment of population in the division of the city into wards, from which it necessarily follows that there is a debasement or dilution of the weight of the votes of citizens living in three of the four wards.

Beginning with Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663, and followed by Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821; Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11

---

1. All section references are to RSMo 1959, V.A.M.S., unless otherwise designated.

L.Ed.2d 481; Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506; WMCA, Inc. v. Lomenzo, 377 U.S. 633, 84 S.Ct. 1418, 12 L.Ed.2d 568; Maryland Committee for Fair Representation v. Tawes, 377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595; Davis v. Mann, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609; Roman v. Sincock, 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620; Lucas v. Forty-Fourth General Assembly of State of Colorado, 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632; Hearne v. Smylie, 378 U.S. 563, 84 S.Ct. 1917, 12 L.Ed.2d 1036; Pinney v. Butterworth, 378 U.S. 564, 84 S.Ct. 1918, 12 L.Ed.2d 1037; and Hill v. Davis, 378 U.S. 565, 84 S.Ct. 1918, 12 L.Ed.2d 1037, the Supreme Court of the United States has established these principles with respect to apportionment of representatives elected on a state level: Legislative reapportionment is a justiciable issue upon which an aggrieved citizen whose right to vote has been impaired may resort to the courts for relief. Statutes which provide for the selection of legislators upon the basis of unequal apportionment of the population in the respective legislative districts may be declared unconstitutional as in violation of the equal protection clause of the fourteenth amendment to the federal constitution. Seats in the legislative branch of state governments must be apportioned substantially on the basis of population; equal representation for equal numbers of people.

■■ In Reynolds v. Sims, supra, it was made clear that "the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections"; that "the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise"; that "the fundamental principle of representative government in this country is one of equal representation for equal numbers of people, without regard to race, sex, economic status, or place of residence within a State"; that state legislative districting schemes which give the same number of representatives to unequal numbers of constituents have the effect of dilution and undervaluation of the votes of those living in the overweighted and overvalued districts, thus resulting in discrimination against those living in disfavored areas, and that diluting the weight of votes because of place of residence "impairs basic constitutional rights under the Fourteenth Amendment just as much as invidious discriminations based upon factors such as race."

■ This Court in Preisler v. Doherty, 365 Mo. 460, 284 S.W.2d 427, 431, has held " * * * that courts have jurisdiction and authority to pass upon the validity of legislative acts apportioning the state into senatorial or other election districts and to declare them invalid for failure to observe non-discretionary limitations imposed by the Constitution," citing State ex rel. Barrett v. Hitchcock, 241 Mo. 433, 146 S.W. 40, and other authorities, and that " * * * in the matter of districting, as well as in other matters, the Legislature has no authority to enact unconstitutional laws."

The decisive question is whether the principle that seats in the legislative branch of the state government must be apportioned substantially on the basis of population should be extended and applied to seats on a city council.

We have found no case in which the question has been passed on by the Supreme Court of the United States but lower federal courts and several state courts have sanctioned the penetration of this principle to levels of government subordinate to the level of state legislatures. Bailey v. Jones, S.Dak.Sup., 139 N.W.2d 385 (board of county commissioners); State ex rel. Sonneborn v. Sylvester, 26 Wis.2d 43, 132 N.W. 2d 249 (county board of supervisors); Ellis v. Mayor and City Council of Baltimore, 4 Cir., 352 F.2d 123 (city council); Seaman v. Fedourich, 16 N.Y.2d 94, 262 N.Y.S.2d 444, 209 N.E.2d 778 (city council); Goldstein v. Rockefeller, 45 Misc.2d

778, 257 N.Y.S.2d 994 (county board of supervisors); Bianchi v. Griffing, D.C., 238 F.Supp. 997 (county board of supervisors); Griffin v. Board of Supervisors of Monterey County (1963), 60 Cal.2d 318, 33 Cal.Rptr. 101, 384 P.2d 421; Henderson v. Superior Court of Marin County (1964), 61 Cal.2d 883, 37 Cal.Rptr. 438, 390 P.2d 206; Miller v. Board of Supervisors of Santa Clara County (1964), 61 Cal.2d 885, 37 Cal.Rptr. 440, 390 P.2d 208; State ex rel. Scott v. Masterson (1962), 173 Ohio St. 402, 183 N.E.2d 376 (city council). See Weinstein, The Effect of the Federal Reapportionment Decisions on Counties and Other Forms of Municipal Government, 65 Columbia Law Review 21, 23–31; and notes in The George Washington Law Review, Vol. 33, No. 5, June 1965, p. 1132; University of Cincinnati Law Review, Vol. 34, No. 3, Summer 1965, p. 397.

Section 1 of the Fourteenth Amendment to the Constitution of the United States provides, among other things, that "No State shall make or enforce any law which shall * * * deny to any person within its jurisdiction the equal protection of the laws."

The following provisions are from the Constitution of Missouri, 1945, V.A.M.S.: Art. I, § 1, provides "That all political power is vested in and derived from the people; that all government of right originates from the people, is founded upon their will only, and is instituted solely for the good of the whole"; Art. I, § 2: "* * * that all persons are created equal and are entitled to equal rights and opportunity under the law; * * *"; and Art. I, § 25: "That all elections shall be free and open[2]; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage."

■ The city council in a city of the third class, elected by the people to represent the inhabitants, is primarily a legis-

lative body exercising general governmental functions. To it broad legislative powers have been delegated, powers which directly affect the lives, liberties, health, business, trade and property of the inhabitants. §§ 77.260, 77.590. The fact that cities are created by the legislature, do not derive their power from the people affected, and occupy a subordinate position in the heirarchy of government does not detract from the principle that in a representative government the people are entitled to equal representation. As a matter of logic voters selecting their representatives to sit on a municipal legislative body are entitled to the same equal protection in the exercise of their right of suffrage as that enjoyed by voters on the state level selecting their state senators and representatives in the state and national legislative bodies; are entitled to full and equal voice in the choice of their representatives on the city council without dilution or diminution of the weight of their individual votes because of the ward in which the voter happens to reside.

■ The Fourteenth Amendment to the Constitution of the United States applies to the State of Missouri and to every governmental creature of the state to which it has delegated powers of government. A city of the third class is a creature of the state and its legislative body, the city council, exercises the legislative powers delegated to it by the General Assembly. The State of Missouri may exercise its legislative powers only through a legislative body apportioned on a population basis, and it logically follows that the agency, arm or instrumentality to which the state delegates some of its powers should be governed by the same principle. Seaman v. Fedourich, supra, 262 N.Y.S.2d l. c. 449, 209 N.E.2d l. c. 782 [4]; Brouwer v. Bronkema, No. 1855, Cir.Ct. Kent County, Michigan, September 11, 1964.

■ Since the members of the City Council of the City of Louisiana are elected

2. Construed in Preisler v. Calcaterra, 362 Mo. 662, 243 S.W.2d 62, as substantially the same as "free and equal."

by the people in a representative capacity, and perform primarily legislative functions importantly affecting the people, the wards from which they are elected must be substantially equal in population, under the equal protection of the laws clauses of the constitutions of the United States and of the State of Missouri.

The fact that the powers of the city council and its composition are prescribed by statute and are not constitutional in origin, and that the right to vote for representatives on the city council is statutory, not constitutional, does not compel a different ruling. The reasoning of the decisions of the Supreme Court of the United States applies with equal force to statutory offices and a statutory right to vote. "The right to vote whether statutory or constitutional to mean anything in a representative government means the right to secure equal representation." Sonneborn, supra, 132 N.W.2d 1.c. 255.

■ Laws 1870, Adjourned Session, p. 386, Art. I, § 4, applicable to the City of Louisiana by virtue of § 72.110, provides for the division of the city into four wards and the apportionment of inhabitants equally among the wards "as near as may be." This complies with the requirement that the apportionment be substantially on the basis of population. The unconstitutional and discriminatory restriction of the count to "free white male" inhabitants must be and is hereby excised from the act, which must be enforced on the basis of all and not a part only of the inhabitants, that is to say, without regard to race or sex. The act of 1870 authorizes the city council, and in view of the conceded malapportionment the council now should exercise its authority, to alter the boundaries of the wards so as to preserve substantial equality of distribution of inhabitants among the wards. Virtually the same authority rests in the council by reason of §§ 77.030 and 77.260, which empower the city council in any city of the third class by ordinance to divide the city into wards and to enact ordinances deemed expedient for the good government of the city, and to alter and modify the same.

■ We conclude that the present districting of the City of Louisiana must be held unconstitutional because it violates the equal protection of the laws clauses of the constitutions of the United States and the State of Missouri and that § 115 of the Revised Ordinances of the City of Louisiana, 1950, fixing the boundaries of its wards, must be altered and modified so as to include "as near as may be," or "as nearly as is practicable," Wesberry v. Sanders, supra, the same number of inhabitants in each ward. The duty to conform to constitutional standards falls upon the city council. In performing this duty the city council will not only divide the city into wards in such manner as to apportion the inhabitants among the wards as near equally as may be, but also will observe the requirement that the wards newly created shall be composed of contiguous territory as compact as possible. See §§ 2 and 7, Art. III, Constitution of Missouri as amended January 14, 1966.

A city election will be held on the first Tuesday of April, 1967, § 77.040, at which time councilmen will be elected, one from each ward. This will occur prior to the time within which the city council can reasonably be expected to complete its reapportionment and prepare and pass the necessary amendatory ordinances. For this reason the April, 1967 elections will not be ordered stayed and the unconstitutionality of the present districting ordinance shall not become effective immediately but as hereinafter directed.

Accordingly, the judgment of the circuit court is reversed, and acting under § 512.160(3) this Court enters here a new judgment by which we declare that:

(1) The provisions of Section 115 of the 1950 revision of the ordinances of the City of Louisiana fixing the geographical boundaries of the four wards of that city

are null and void because they are in conflict with the equal protection of the laws clauses of the state and federal constitutions. This declaration of unconstitutionality and invalidity shall become effective on January 1, 1968.

(2) The orderly operation of government requires that the present city council elected under said Section 115 and the four councilmen to be elected thereunder in April, 1967 be permitted to function until their terms of office expire. As the terms of office of councilmen elected under said Section 115 expire their successors on the city council shall be elected from the newly constituted wards. The validity of the acts of the city council in the interim shall not be challenged on the basis of this decision.

(3) Subject to the provisions of the foregoing judgment, the cause is remanded to the Circuit Court of Pike County for the entry of any appropriate orders necessary to enforce our judgment, and to reapportion the inhabitants among the wards of the City of Louisiana under the orders and administration of the circuit court if the city council shall not have redrawn the boundaries of the wards in such a manner as to meet constitutional standards by January 1, 1968.

WELBORN, C., not sitting.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

HOLMAN, P. J., HENLEY, J., and STORCKMAN, Alt. J., concur.

HYDE, J., not sitting.