**Paul W. PREISLER, Ernest Calloway, Carmelita Lowry, Bostic J. Franklin, Lucy King, and Mary Hilliker, individually, and in behalf of all other persons resident of the City of St. Louis, who are eligible to vote for Members of the Board of Aldermen of the City of St. Louis, Missouri, Plaintiffs,**

**v.**

**The MAYOR OF the CITY OF ST. LOUIS, the President of the Board of Aldermen, individually, and in behalf of all other members of the Board of Aldermen of the City, and the Members of the Board of Election Commissioners of the City of St. Louis, MISSOURI, Defendants.**

**No. 68C 338(2).**

United States District Court
E. D. Missouri, E. D.

June 30, 1969.

Paul W. Preisler, St. Louis, Mo., for plaintiffs.

Gary M. Gaertner, City Counselor, David S. Hemenway, Assoc. City Counselor, St. Louis, Mo., for defendant.

## MEMORANDUM

MEREDITH, District Judge.

The plaintiffs are six registered voters of the City of St. Louis, Missouri. They brought this suit, individually and in behalf of others similarly situated, against the Mayor of the City of St. Louis, the President of the Board of Aldermen of the City of St. Louis, the members of the Board of Aldermen of the City of St. Louis, and the Board of Election Commissioners of the City of St. Louis. The plaintiffs seek a declaratory judgment that the manner in which the twenty-eight wards of the City of St. Louis are divided for the purpose of aldermanic representation, and whose boundaries are created by Ordinances Nos. 53564 and 54404 of the City of St. Louis, violates the equal protection clause of the

Fourteenth Amendment to the United States Constitution. The plaintiffs also request injunctive relief prohibiting future elections under these ordinances, and that the Court retain jurisdiction until such time as the ward boundaries are drawn in accordance with the United States Constitution.

■ This Court has jurisdiction under the provisions of 28 U.S.C. § 1343(3) and 42 U.S.C. §§ 1983 and 1988. The ordinances sought to be declared unconstitutional are part of the Charter of the City of St. Louis, which was approved by the 1945 Constitution of the State of Missouri, V.A.M.S. (Article 6, Section 31). The Charter is of local and not statewide application. A three-judge court under the provisions of 28 U.S.C. § 2281 is not required. See Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967), and Dusch v. Davis, 387 U.S. 112, 87 S.Ct. 1554, 18 L.Ed.2d 656 (1967).

The City of St. Louis is divided into twenty-eight wards which elect one alderman each to the Board of Aldermen. The President of the Board of Aldermen is elected at large. The legislative power of the City of St. Louis is vested in this Board. See Charter of City of St. Louis, August 29, 1914, as amended, Article IV, Section 1. The twenty-eight wards are created by Article I, Section 3, of the Charter. That section provides:

"WARDS—The city is hereby divided into twenty-eight wards, bounded and numbered as the wards of the city now are, provided, that from time to time corrected ward boundaries may be established by ordinance which shall comprise, as nearly as practicable, compact and contiguous territory within straight lines, and contain as nearly as may be the same number of registered voters."

The ward boundaries as they presently exist were drawn by Ordinance 53564, June 30, 1965, and Ordinance 54404, November 10, 1966.

The plaintiffs contend that the present apportionment of the aldermanic wards creates an invidious discrimination and vote debasement as between citizens of various wards. They urge that the only constitutionally permissible basis for apportionment is equal population. The defendants contend that registered voters are a proper criterion upon which ward boundaries may be drawn in St. Louis.

■ The Supreme Court of the State of Missouri and the Supreme Court of the United States have clearly held that the principle of one man, one vote enunciated in Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964), and in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), is applicable to units of local government. Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968); and Armentrout v. Schooler, 409 S.W.2d 138 (Mo.1966). The Supreme Court of the State of Missouri applied these principles to councilmen elected from disproportionate wards in a third-class city in Armentrout v. Schooler, supra. In that case the Court said:

"Since the members of the City Council * * * are elected by the people in a representative capacity, and perform primarily legislative functions importantly affecting the people, the wards from which they are elected must be substantially equal in population, under the equal protection of the laws clauses of the constitutions of the United States and of the State of Missouri."

The United States Supreme Court has consistently held that the controlling criterion in apportionment controversies is that the Constitution permits no substantial variation from equal population as a basis for districting legislative bodies. See Kirkpatrick v. Preisler, 394 U.S. 526, 89 S.Ct. 1225, 22 L.Ed.2d 519 (1969); Avery v. Midland County, supra; Reynolds v. Sims, supra; WMCA, Inc. v. Lomenzo, 377 U.S. 633, 84 S.Ct. 1418, 12 L.Ed.2d 568 (1964); Maryland Committee v. Tawes, 377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595 (1964); Davis v. Mann, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609 (1964); and Roman v. Sincock,

377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620 (1964).

The above decisions, while establishing "equal population" as a basis for apportionment, do not define what the Supreme Court means by population. This was brought out by the Court in Burns v. Richardson, 384 U.S. 73, 91, 86 S.Ct. 1286, 1296, 16 L.Ed.2d 376 (1966):

> "We start with the proposition that the Equal Protection Clause does not require the States to use total population figures derived from the federal census as the standard by which this substantial population equivalency is to be measured. Although total population figures were in fact the basis of comparison in that case [Reynolds v. Sims] and most of the others decided that day, our discussion carefully left open the question what population was being referred to. At several points, we discussed substantial equivalence in terms of voter population or citizen population, making no distinction between the acceptability of such a test and a test based on total population."

The Supreme Court in Burns v. Richardson approved a temporary apportionment of the Hawaii House of Representatives on the basis of registered voters. It was pointed out that the decision was not an approval of registered voters as a basis for apportionment other than as an interim basis under the particular facts of that case. The use of registered voters was approved "only because on this record it was found to have produced a distribution of legislators not substantially different from that which would have resulted from the use of a permissible population basis." Burns v. Richardson, supra, at 93, 86 S.Ct. at 1297.

■ The *Burns* decision shows that total population figures derived from the federal decennial census is a constitutionally permissible basis for apportionment. That decision also shows that some type of net population basis is also permissible. The Supreme Court called attention to the fact that it had never suggested that "the States are required to include aliens, transients, short-term or temporary residents, or persons denied the vote for conviction of crime * * *" Burns v. Richardson, supra, at 92, 86 S. Ct. at 1296.

■■ The *Burns* decision shows, as a minimum, that voter registration per se is not a constitutionally permissible basis for apportionment. It is constitutionally acceptable only if the results substantially reflect the results obtainable by the use of another permissible basis, such as total population. It cannot be contended seriously that elected officials represent only registered voters. The right to equal representation does not depend upon the extent of a person's political activity or his exercise of political rights.

■ The Supreme Court in Roman v. Sincock, supra, stated that the constitutional validity of an apportionment scheme could not be tested by a "rigid mathematical standard." That Court has rejected the acceptability of any fixed de minimis numerical or percentage variation from the requirement that "as nearly as practicable" each person's vote is to be worth as much as another's vote. See Kirkpatrick v. Preisler, supra. The proper judicial approach is to determine whether, under the particular circumstances of a specific case, there "has been a faithful adherence to a plan of population-based representation, with such minor deviations only as may occur in recognizing certain factors that are free from any taint of arbitrariness or discrimination." Roman v. Sincock, supra, 377 U.S. at 710, 84 S.Ct. at 1458.

The equal protection clause of the Fourteenth Amendment requires "equal representation for equal numbers of people * * *" Reynolds v. Sims, supra, 377 U.S. at 560–561, 84 S.Ct. at 1381. A maximum variance of +3.13% and —2.84% from the ideal congressional district was held not to meet the constitutional requirements in Kirkpatrick v. Preisler, supra. A maximum variance of +6.488% and —6.608% from the ideal was held unacceptable in Wells v. Rockefeller, 394 U.S. 542, 89 S.Ct. 1234, 22 L.

Ed.2d 535 (1969). A maximum total population variance ratio of 1.66 to 1 between city wards was held constitutionally impermissible in Ellis v. Mayor and City Council of Baltimore, 352 F.2d 123 (4th Cir. 1965).

The total population figures in this case based upon the 1960 Census, and the registered voter figures for September 4, 1968, April 27, 1967, and September 1, 1966, broken down for each of the twenty-eight aldermanic wards of the City of St. Louis are shown in Attachment A.

The wards as presently drawn and as reflected by the voter registration figures of September 4, 1968, vary from a low of 7,392 registered voters in the 7th Ward to a high of 11,608 registered voters in the 12th Ward. This is a variation in the number of registered voters the two aldermen represent of a ratio of 1.57 to 1. If each of the twenty-eight wards were to contain an equal number of registered voters, the ideal ward would have 9,376 registered voters based upon the September 4, 1968, registration. The 7th Ward has 1,984, or 21.16%, fewer registered voters than the ideal ward based upon registered voters. The 12th Ward has 2,232, or 23.80%, more registered voters than the ideal ward based upon registered voters.

The discrepancy is even more striking when total population is compared. The total population based upon the 1960 census shows that the St. Louis aldermanic wards vary from a low of 15,947 persons in the 16th Ward to a high of 47,021 persons in the 7th Ward. This is a variation of the number of persons the aldermen in these two wards represent of a ratio of 2.95 to 1. If each of the twenty-eight wards were to contain an equal number of persons, the ideal ward would contain 26,786 persons based upon the 1960 Census. The 16th Ward has 10,839, or 40.46%, fewer persons than the ideal ward based upon total population. The 7th Ward has 20,235, or 75.54% more persons than the ideal ward based upon total population.

An examination of the statistics in Attachment B shows that these comparisons are not isolated variances from the ideal, but merely the extremes. Attachment A shows that the same basic pattern appears if the voter registration figures of April 27, 1967, and of September 1, 1966, are compared.

■ These statistics for the City of St. Louis show very clearly that the wards do not comply with the minimal constitutional requirements of equal representation. The variances from the ideal based upon total population are too great. No attempt was made to justify the variances. No justification is possible for variances of such magnitude. The use of registered voters as a basis for apportionment of the aldermanic wards of the City of St. Louis is not constitutionally permissible under the facts as presented in this case.

The main question remaining is the nature of the remedy this Court should issue. The difficulty arises out of the fact that the aldermanic wards as presently drawn do not comply with the requirements of the Charter of the City of St. Louis (Article I, Section 3: " * * contain as nearly as may be the same number of registered voters.") See Armentrout v. Schooler, supra. It would not be appropriate to order that the aldermanic wards be reapportioned to comply with the Charter. Apportionment by registered voters is the only basis designated by the Charter, and it is not a permissible basis.

Accordingly, the Court will enter an order declaring that the present apportionment of the aldermanic wards of the City of St. Louis violates the equal protection clause of the Fourteenth Amendment of the United States Constitution and that Article I, Section 3, of the Charter of the City of St. Louis in providing that each ward shall "contain as nearly as may be the same number of registered voters" does not provide a constitutionally-permissible basis of apportionment. The Court will also enjoin future aldermanic election under the present method of apportionment. The parties will be directed to submit to the

Court within 30 days suggestions for a plan to provide a basis for aldermanic reapportionment which complies with the constitutional requirements of equal representation for equal numbers of people.

## ATTACHMENT A

| Ward [1] | Census Population 1960 [2] | Reg. Voters Sept. 4 1968 | Reg. Voters Apr. 27, 1967 | Reg. Voters Sept. 1, 1966 |
|---|---|---|---|---|
| 1 | 19,498 | 9,408 | 9,161 | 9,581* |
| 2 | 30,208 | 8,883 | 9,743 | 10,297* |
| 3 | 36,101 | 7,736 | 7,849 | 8,628 |
| 4 | 25,151 | 9,016 | 8,905 | 9,457 |
| 5 | 37,314 | 8,267 | 8,028 | 8,750 |
| 6 | 18,826 | 9,687 | 9,273 | 9,670 |
| 7 | 47,021 | 7,392 | 7,530 | 8,638 |
| 8 | 29,360 | 9,340 | 8,569 | 8,892 |
| 9 | 32,602 | 8,576 | 8,472 | 9,097 |
| 10 | 23,971 | 8,777 | 8,706 | 9,343 |
| 11 | 28,717 | 10,498 | 10,124 | 10,710 |
| 12 | 20,342 | 11,608 | 11,022 | 11,015 |
| 13 | 20,579 | 10,925 | 10,470 | 10,773 |
| 14 | 20,572 | 9,891 | 9,499 | 10,007 |
| 15 | 24,505 | 9,333 | 9,042 | 9,845 |
| 16 | 15,947 | 9,561 | 9,324 | 9,477 |
| 17 | 33,759 | 9,079 | 8,814 | 9,518 |
| 18 | 24,808 | 8,840 | 8,996 | 9,922 |
| 19 | 32,859 | 7,997 | 7,652 | 8,496 |
| 20 | 24,662 | 10,677 | 10,457 | 10,849 |
| 21 | 23,087 | 10,555 | 9,978 | 10,549 |
| 22 | 28,666 | 9,004 | 8,648 | 9,351 |
| 23 | 24,854 | 10,208 | 10,014 | 10,284 |
| 24 | 22,651 | 9,899 | 9,786 | 10,027 |
| 25 | 30,070 | 9,374 | 9,174 | 10,226 |
| 26 | 26,321 | 9,171 | 8,827 | 9,466 |
| 27 | 19,892 | 9,453 | 9,430 | 9,813 |
| 28 | 27,683 | 9,376 | 9,334 | 9,921 |
| Total | 750,026 | 262,531 | 256,827 | 272,602** |

1.  Boundaries of wards 1 and 2 drawn Nov. 10, 1966. Boundaries of wards 3 thru 28 drawn June 30, 1965.

2.  Source: 1960 Census of Population and Housing, City Blocks, St. Louis, Mo., Series HC(3)–232, based upon wards in effect on June 30, 1967, as certified to by the Director of the Bureau of the Census, U. S. Dept. of Commerce.

\*   Wards 1 and 2 boundaries for 1966 are not the same as boundaries for 1967 and 1968 figures.

\*\* Defendant's Exhibit A shows a total of 272,632. The correct total for the figures given is 272,602.

ATTACHMENT B

Comparison of Actual Wards with the
Ideal Ward Based upon Total Population
and upon Registered Voters.  Variance
shown as percentage above or below Ideal

| Wards | Actual Number of Registered Voters Sept. 4, 1968 | Percent Variation from Ideal Ward Based on Registered Voters | Actual Total Population Per Ward 1960 Census | Percent Variation from Ideal Ward Based on Total Population |
|---|---|---|---|---|
| Ideal | 9,376 | | 26,786 | |
| 1 | 9,408 | + 0.34 | 19,498 | −27.21 |
| 2 | 8,883 | − 5.26 | 30,208 | +12.77 |
| 3 | 7,736 | −17.49 | 36,101 | +34.77 |
| 4 | 9,016 | − 3.84 | 25,151 | − 6.10 |
| 5 | 8,267 | −11.83 | 37,314 | +39.30 |
| 6 | 9,687 | + 3.32 | 18,826 | −29.72 |
| 7 | 7,392 | −21.16 | 47,021 | +75.54 |
| 8 | 9,340 | − 0.38 | 29,360 | + 9.61 |
| 9 | 8,576 | − 8.53 | 32,602 | +21.71 |
| 10 | 8,777 | − 6.39 | 23,971 | −10.51 |
| 11 | 10,498 | +11.97 | 28,717 | + 7.21 |
| 12 | 11,608 | +23.80 | 20,342 | −24.06 |
| 13 | 10,925 | +16.52 | 20,579 | −23.17 |
| 14 | 9,891 | + 5.49 | 20,572 | −23.20 |
| 15 | 9,333 | − 0.46 | 24,505 | − 8.51 |
| 16 | 9,561 | + 1.97 | 15,947 | −40.46 |
| 17 | 9,079 | − 3.17 | 33,759 | +26.03 |
| 18 | 8,840 | − 5.72 | 24,808 | − 7.38 |
| 19 | 7,997 | −14.71 | 32,859 | +22.67 |
| 20 | 10,677 | +13.87 | 24,662 | − 7.93 |
| 21 | 10,555 | +12.57 | 23,087 | −13.81 |
| 22 | 9,004 | − 3.97 | 28,666 | + 7.02 |
| 23 | 10,208 | + 8.87 | 24,854 | − 7.21 |
| 24 | 9,899 | + 5.58 | 22,651 | −15.44 |
| 25 | 9,374 | − 0.02 | 30,070 | +12.26 |
| 26 | 9,171 | − 2.19 | 26,321 | − 1.73 |
| 27 | 9,453 | + 0.82 | 19,892 | −25.74 |
| 28 | 9,376 | 0 | 27,683 | + 3.35 |