**Charles GRISBAUM, Jr.**

v.

**John J. McKEITHEN et al.**

**Lynn E. TOMES**

v.

**JEFFERSON PARISH COUNCIL.**

Civ. A. Nos. 71–1343, 71–2142.

United States District Court, E. D. Louisiana, New Orleans Division.

Aug. 11, 1971.

Ferdinand J. Kleppner, Metairie, La., for plaintiff, Charles Grisbaum, Jr.

Patrick E. Carr, Metairie, La., for plaintiff, Lynn E. Tomes.

Louis B. Porterie and W. Eric Lundin, III, New Orleans, La., for defendant, Harold L. Molaison.

James O. Manning, Lionel R. Collins, and Roy L. Price, Asst. Jefferson Parish Attys., Gretna, La., for defendant Jefferson Parish Council.

## INTERIM JUDGMENT

R. BLAKE WEST, District Judge.

After conference held between all counsel, and upon consideration of all memoranda and statistical data and other matters submitted to the Court by counsel, and for the reasons set forth in the detailed REASONS FOR INTERIM JUDGMENT, the Court rules as follows:

1. It is the judgment of this Court that the election of July 31, 1971 to amend the Home Rule Charter of Jefferson Parish so as to provide for a Council of either nine or thirteen persons was and is invalid because of the failure of the Jefferson Parish Council to provide the required sixty-day period between the adoption of the resolution providing for the election and the date of the said election.

2. It is the judgment of this Court that the present apportionment of the Jefferson Parish Council is constitutionally impermissible because of the disproportionate populations of the four councilmanic districts of Jefferson Parish.

3. It is the judgment of this Court that it is empowered to choose among various plans for reapportionment to be submitted by the interested parties no later than 10:00 a. m. on August 13, 1971 and that the Court will select the plan which it deems most adequately meets constitutional requirements.

4. It is further ordered that any reapportionment plans strictly conform to Section 2.03 of the Jefferson Parish Charter, which provides for a seven member Council.

## REASONS FOR INTERIM JUDGMENT

The Court is called upon to deal with the means of proper apportionment of the Jefferson Parish Council which, allegedly, is constituted in such a fashion as to violate equal protection standards of the Fourteenth Amendment of the United States Constitution.

Presently before the Court are two consolidated suits relating to this matter. Grisbaum v. McKeithen et al. seeks to compel reapportionment of the seven member Jefferson Parish Council. Tomes v. Jefferson Parish Council seeks to invalidate a recent election by which citizens in Jefferson Parish voted to change the structure of parish government by creation of a nine member council. Both suits are the progeny of long

standing inactivity by Jefferson Parish to effectuate a constitutionally valid plan of apportionment.

An examination of prior local activities is helpful in explaining the necessity of this involvement by the Federal Court in the apportionment of Jefferson Parish. On May 14 of this year, plaintiff Grisbaum filed suit in this Court seeking to re-district the various seats of the parish council in accordance with constitutional mandates. Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L. Ed.2d 506 (1964); Avery v. Midland County, Texas, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968). In anticipation of inevitable court action, and in an attempt to correct manifest inequities in the present system of apportionment, the Jefferson Parish Council initiated plans on May 31 to enlarge the size of the council and to reapportion the districts therein in accordance with constitutional guidelines.

The composition of the Jefferson Parish Council, as well as that of the individual parish districts, was incorporated into the Home Rule Charter of Jefferson Parish.[1] Accordingly, any change involving a redistricting required an amendment to the Charter pursuant to Section 6.07:

"Amendments to this Charter may be proposed by an ordinance adopted by the Parish Council or by petition of fifteen per cent of the registered voters in the parish, provided, however, that no amendment shall be made for six months after this Charter becomes effective. The Council shall call an election not less than 60 nor more than 120 days after it adopts the resolution or receives a petition certified in the manner required for an initiatory petition for an ordinance. The adoption of an amendment shall require a majority of the electors voting on the amendment."

In an effort to properly amend the Charter prior to the upcoming election of district representatives in November, the council adopted Emergency Ordinance No. 10152 which provided that an election be held on July 31, 1971, and that:

". . . at the said election there shall be submitted to all registered voters qualified and entitled to vote at said election under the Constitution and laws of the State of Louisiana, a plan or plans of reapportionment (affecting Sections 2.02 and 2.03 of the Jefferson Parish Home Rule Charter) of Jefferson Parish as determined by subsequent action of the Jefferson Parish Council after a public hearing to be held after proper legal delays and public notice."[2]

Subsequently, on June 18, 1971 the Council adopted Resolution No. 18443

---

1. *Jefferson Parish Charter*
   *Section 2.02 Council Districts*
   A. There shall be four Parish Council districts made up by combining the wards of the parish as they existed on January 1, 1957 as follows:
   The first district shall consist of all that territory included within Wards I, II, and III. The second district shall consist of all that territory included within Wards IV, V, VI, and XI. The third district shall consist of all that territory included in Wards VII and IX. The fourth district shall consist of all that territory included in Wards VIII and X.
   B. The parish may be redistricted by amendment to the Charter as provided in Section 6.07.
   *Section 2.03 Composition, Election, and Compensation*
   A. There shall be a Parish Council consisting of seven members, one of whom shall be elected at large, one from and by the first and second Council districts combined, one from and by the third and fourth Council districts combined, and one each from and by each Council district. All Council members shall reside in and be qualified voters of the parish, and those elected from Council districts shall reside in and be qualified voters of their respective districts. No Council member shall hold any other public office or position, except the office of notary public, office in the armed services, or the position of principal or teacher in the public school system.

2. Brief submitted on behalf of Jefferson Parish Council.

which set forth two proposed amendments to the Charter—one proposition providing for a nine member council, the other calling for a thirteen member council. The Council's adoption of the Resolution preceded the July 31 election by only 43 days.

In consideration of the foregoing factors, the Court must determine (1) the validity of the election, and (2) the constitutionality of the present apportionment of councilmanic districts within Jefferson Parish.

*Validity of the Election*

█ The citizens of Jefferson Parish voted on July 31, 1971 to increase the size of the Jefferson Parish Council from seven members to nine members. The Court holds this election invalid for failure of the Council to observe the procedural requirements of Section 6.07 of the Parish Charter. More specifically, the Council allowed only 43 days from the date of adopting the reapportionment resolution until the date of the election; Section 6.07 of the Charter plainly states that the Council shall call an election not less than 60 days "after it adopts the resolution". It is impossible to circumvent the sixty day waiting period required for amending of the Charter, and it is the Council's failure to follow this procedure which renders the July 31 election invalid.

*Constitutionality of Present Apportionment*

The resolution of the previous issue compels consideration of the constitutionality of the present apportionment of councilmanic districts within Jefferson Parish. It has been nearly a decade since the historic Supreme Court announcement that apportionment statutes which violated concepts of equal protection presented a "justiciable" controversy. Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Reynolds v. Sims, *supra*, was the initial implementation case requiring that representatives must be distributed in accordance with population distribution "as nearly as practical". Avery v. Midland County,

*supra*, applied this principle to units of local government. The United States Supreme Court has consistently held that the controlling criterion in apportionment controversies is that the Constitution permits no substantial variation from equal population as a basis for districting legislative bodies. Preisler v. Mayor of City of St. Louis, 303 F. Supp. 1071, E.D.Mo. (1969); Kirkpatrick v. Preisler, 394 U.S. 526, 89 S.Ct. 1225, 22 L.Ed.2d 519 (1969); Avery v. Midland County, *supra*. Needless to say, these authorities are pertinent to councilmanic districts as well as other units of local government. Ellis v. Mayor and City Council of Baltimore, 352 F.2d 123 (4 Cir., 1965); Keil v. Schorr, 282 F. Supp. 608, D.Del. (1968).

█ It is the opinion of this Court that the present apportionment structure of the Jefferson Parish Council is constitutionally impermissible. Such holding should be no surprise to the Council which has itself belatedly sought to correct the constitutional deficiencies of its apportionment.

According to the Advance Report of the 1970 United States Census of Population, the population of each of the councilmanic districts of Jefferson Parish together with the number of representatives presently representing each district is as follows:

| COUNCIL-MANIC DISTRICTS | WARDS | TOTAL POPULA-TION | NUMBER OF COUNCIL-MEN |
|---|---|---|---|
| 1 | 1, 2 & 3 | 53,789 | 1 |
| 2 | 4, 5, 6 & 11 | 72,008 | 1 |
| 3 | 7 & 9 | 95,686 | 1 |
| 4 | 8 & 10 | 116,085 | 1 |
| East Bank "at large" | 7, 8, 9 & 10 | 211,771 | 1 |
| West Bank "at large" | 1, 2, 3, 4, 5, 6 & 11 | 125,797 | 1 |
| 1, 2, 3, 4 "at large" | | | 1 |

It appears that the population of District 4 is more than double that of District 1, yet both districts have one representative. Under no conditions can such a high variance be sanctioned. In Kirk-

patrick v. Preisler, *supra*, the Supreme Court refused to set a fixed numerical standard for reapportionment cases. Though rejecting a *de minimus* standard, the Court required "a good faith effort to achieve precise mathematical equality" and found that a 5.9% variation was "not unavoidable". Other percentages which have been held impermissible are: 24.7%, Whitcomb v. Chavis, 403 U.S. 124, 91 S.Ct. 1858, 28 L.Ed.2d 363 (1971); 13%, Wells v. Rockefeller, 394 U.S. 542, 89 S.Ct. 1234, 22 L.Ed.2d 535 (1969); 16%, Ely v. Klahr, 403 U.S. 108, 91 S.Ct. 1803, 29 L.Ed.2d 352 (1971).

■ The percentage of variation is determined by dividing the total unit population by the number of districts therein. The resultant dividend is the ideal population per district. The percentage of deviation of the least populated district from the ideal is added to the deviation of the most populated district from the ideal, and that sum is the percentage of variation as discussed herein. Using this formula, the percentage of variance for the single-member councilmanic districts of Jefferson Parish is greater than 60%, and the percentage of variance for the two "at large" districts is greater than 40%. Such high deviations from the ideal are clearly impermissible.

Thus, to the extent that Sections 2.02 and 2.03 of the Jefferson Parish Charter provide for disproportionate district representation and are in conflict with this decision, they are held to be void and unconstitutional, being in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

Consequently, the Court is confronted with the unwanted, cumbersome, and pressing task of determining properly apportioned councilmanic districts for Jefferson Parish. The deadline for qualifying as a candidate for district representative is August 19, 1971, eight days from the date of the Court's Interim Judgment. The reluctance of the Court to involve itself in the apportionment problems of Jefferson Parish is indeed aggravated by the fact that the Jefferson Parish Council has long been aware of the necessity of dealing with the constitutional mandates for proper legislative apportionment. The Court is aware that a Reapportionment Committee was appointed by the Council as long ago as July 9, 1968, that the Committee met intermittently until April 9, 1970, and at no time did that Committee formulate a workable program for reapportionment. The Court must now undertake, under pressing deadline, the exact task which the Council and the Committee did not complete in the space of three years. The marked increase in the population of Jefferson Parish over the past decade [3] was surely as manifest as the certainty of the upcoming election. Nevertheless, neither fact prompted the Council to take the necessary action requisite to reapportionment. The Court must now assume this responsibility.

■ ■ Because of the constitutional deprivations inherent in a malapportioned legislative body, this Court is obliged, barring anything short of an "insurmountable barrier", to put into effect a properly apportioned councilmanic plan before the next election. The most recent Supreme Court pronouncements in this area stress the need for swift judicial action in remedying ill-proportioned legislative bodies. Ely v. Klahr, 403 U.S. 108, 91 S.Ct. 1803, 29 L.Ed.2d 352 (1971); Connor v. Johnson, 402 U.S. 690, 91 S.Ct. 1760, 29 L.Ed.2d 268 (1971).

In *Connor, supra,* the Supreme Court held that the District Court had ample time to devise a four member single district plan though only seventeen days remained until the qualifications deadline. The Supreme Court, however, did hold in *Ely, supra,* that it was proper for a District Court to permit use of inadequate reapportionment plans where the District Court expressed the impossibili-

3. The brief submitted by the Council shows the population of Jefferson Parish to increase from 184,500 in 1958 to 337,568 in 1970, an increase of 153,068.

ty of devising a proper plan in time for the coming election.

In spite of the increasing burden of time, this Court cannot say that the formulation of a properly apportioned plan for Jefferson Parish is impossible. The Court well knows that districting and apportionment are matters best left to legislative determination.[4] Yet, legislative inaction cannot be permitted to sanction violations of equal protection. In fairness to all parties, the Court has, in its Interim Judgment, ordered all interested parties to submit a proper and valid plan of reapportionment no later than 10:00 a. m., August 13, 1971.

Section 2.03 of the Charter of Jefferson Parish provides for a seven member Council. Inasmuch as the Court may not on its own initiative alter the actual structure of Parish government, the submitted apportionment plans must accord with the structural requirements of Section 2.03 of the Charter.

## JUDGMENT

The citizens of Jefferson Parish voted on July 31, 1971 to increase the membership of the Jefferson Parish Council from seven members to nine members. The Court, in an Interim Judgment rendered on August 11, 1971, declared that election invalid.

The invalidation of the election required a consideration of the constitutionality of the apportionment of Jefferson councilmanic districts. It was the Court's judgment that the respective districts' populations were disproportionate to a degree inconsistent with constitutional mandates, and it was held, therefore, that Jefferson's present system of district representation is unconstitutional.

Inasmuch as no plan for reapportionment was presented by the Council, the Court gave leave to all parties at inter-est in the lawsuit to submit reapportionment proposals in conformity with constitutional guidelines. All parties to this litigation have now submitted reapportionment plans and the Court has considered the merit of each proposal. A joint proposal was submitted on behalf of plaintiff, Charles Grisbaum, Jr., and defendant, Jefferson Parish Council, which, as amended by those parties, is constitutionally permissible.

It is the judgment of this Court, therefore, for reasons which will be assigned hereafter that the plan presented by plaintiff Grisbaum and the Jefferson Parish Council, as amended, is approved and shall control any and all future elections until such time as the citizens of Jefferson Parish might choose to redistrict in accordance with acceptable guidelines and in accordance with the provisions of the Jefferson Parish Home Rule Charter.

It is the judgment of this Court that the Jefferson Parish Council shall consist of seven members consisting of one member representing each of the four councilmanic districts, one representing Districts 1 and 2 at large, one representing Districts 3 and 4 at large, and one representing the Parish at large. The population of the four districts in accordance with the plan adopted by the Court is as follows:

| District No. 1 | 83,756 |
| District No. 2 | 84,784 |
| District No. 3 | 85,398 |
| District No. 4 | 84,614 |

The composition of the four Districts is as follows:

District No. 1 will comprise all of Wards 1, 2, 3, and the following precincts in Ward 4: Precincts 1, 2, 3, and 5, a portion of Precinct 6 between Fourth Street and the River, a portion of Pre-

4. Reynolds v. Sims, 377 U.S. 533, 586, 84 S.Ct. 1362, 1394, 12 L.Ed.2d 506 (1964);

"[L]egislative reapportionment is primarily a matter for legislative consideration and determination, and * * *

judicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having had an adequate opportunity to do so."

cinct 8 between Fourth Street and the River, a portion of Precinct 10 between Fourth Street and the River, a portion of Precinct 11 between Fourth Street and the River, a portion of Precinct 12 between Fourth Street and the River, a portion of Precinct 13 between Fourth Street and the River, and all of Precincts 17 and 18, and the following precincts in Ward 7: Precincts 1, 2, 3, 4, 5, 6, 7, 8, and 9; and the following precincts in the 8th Ward: Precincts 14, 15, and 22, which said District will comprise a total estimated population of 83,756.

District No. 2 will comprise the following precincts in Ward 4: Precinct 4, a portion of Precinct 6 between Fourth Street and August Avenue, all of Precinct 7, all of Precinct 7–A, a portion of Precinct 8 between Fourth Street and the Westbank Expressway, all of Precinct 9, all of Precinct 9–A, a portion of Precinct 10 between Fourth Street and the 6th Ward line, a portion of Precinct 11 between Fourth Street and the 6th Ward line, a portion of Precinct 12 between Fourth Street and the 6th Ward line, a portion of Precinct 13 between Fourth Street and the 6th Ward line, all of Precinct 14, all of Precinct 15, all of Precinct 16, all of Wards 5, 6, and 11, and the following precincts in Ward 7: Precincts 10, 11, 12, 13, 14, 15, 16, 17, 18, and 19, and the following precincts in Ward 8: Precincts 20–A, 21, 23, 24, 25, 26, 27, 27–A, 29–A, 34, 35, 38, and 39, which said District will comprise a total estimated population of 84,784.

District No. 3 will comprise all of the 9th Ward and the following precincts in the 10th Ward: Precincts 25, 26, 27, 28, which said District will comprise a total estimated population of 85,398.

District No. 4 will comprise the following precincts in Ward 8: Precincts 1, 2, 3, 4, 6, 7, 8, 11, 12, 13, 16, 17–A, 18, 19–A, 19–B, 21–A, 25–A, 28, 30, 31, 36, 37, 37–A, 37–B, and all of Ward 10, except Precincts 25, 26, 27, and 28, which said District will comprise a total estimated population of 84,614.

It is the further judgment of the Court that candidates for the November elections for offices on the Jefferson Parish Council for either District Representatives or At-Large Representatives for Districts 1 and 2 and Districts 3 and 4 shall qualify in accordance with this judgment and for office in the appropriate Districts as set forth in this judgment.

The reasons in support of the foregoing judgment shall be assigned by the Court on Friday, August 13, 1971.

## REASONS IN SUPPORT OF JUDGMENT

The Court, by judgment rendered on August 12, 1971, selected from several plans submitted a plan to reapportion the councilmanic districts of Jefferson Parish. The specific details of the approved plan are set forth in that judgment.

In determining which plan should be adopted, and indeed, in becoming involved at all in the operation of the government of Jefferson Parish, the Court was most reluctant to undertake what properly amounts to a legislative function. The Court fully recognizes and appreciates the pronouncements of Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) that:

> "(L)egislative reapportionment is primarily a matter for legislative consideration and determination, and that judicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional requisites." 377 U.S. at 586, 84 S.Ct. at 1394.

It is the Court's opinion that reapportionment is essentially a legislative function and that matters of this nature fall appropriately within the scope of Council activity. A deference to legislative apportionment enactments, based upon the theory of separation of powers, has been exercised in cases ranging from congressional redistricting to the apportionment of local police juries. In Bush v. Martin, 251 F.Supp. 484 (S.D.Tex., 1966) a three judge court upheld a congressional redistricting plan over claims that nonlegislative plans could be adopted with greater mathematical precision. See also Sewell v. St. Tammany Police

Jury, 338 F.Supp. 252 (E.D.La., July 21, 1971); Long v. Docking, 283 F.Supp. 539 (D.Kan.1968); Nolan v. Rhodes, 251 F.Supp. 584 (S.D.Ohio, 1965) aff'd, 383 U.S. 104, 86 S.Ct. 716, 15 L.Ed.2d 616; Paulson v. Meier, 232 F.Supp. 183 (D.N. D., 1964).

In the present case the Court approved a plan which was unanimously proposed and later adopted and endorsed by the Jefferson Parish Council. The plan purportedly provided for four districts with a population variance percentage of 1.8%. The Council subsequently informed the Court on August 13, 1971 that the population figures of District 1 and District 2 that had been provided to the Court were erroneous, and that the actual populations of the respective districts are 81,272 and 86,-284. Therefore, the variance is now computed at a percentage of 5.9%. Although this figure is clearly not as desirable as the previous lower variance, such variance is permissible within the constitutional guidelines set forth in the Court's discussion of this subject in its Interim Judgment rendered on August 11, 1971.

The ultimate goal of apportionment is, of course, perfectly equal representation. However, reapportionment decisions have not required exact mathematical precision. The cases require, rather, that the plan be "as nearly as practical" to mathematical precision as can be obtained. This criterion is applicable to reapportionment of congressional districts, Kirkpatrick v. Preisler, 394 U.S. 526, 89 S. Ct. 1225, 22 L.Ed.2d 519 (1969); of state legislatures, Swann v. Adams, 385 U.S. 440, 87 S.Ct. 569, 17 L.Ed.2d 501 (1967); and of local legislative bodies, Hadley v. Jr. College District, 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970). The Court is satisfied that good faith, albeit inexcusably tardy, efforts to obtain mathematical equality were exerted by the Council, and that the Council's plan approved by the Court is within constitutional limits of equal protection. Annexed to this judgment are copies of (a) a Jefferson Parish map which in ef-fect is the plan submitted by the Parish Council and which graphically shows the make-up of the new districts, marked "Exhibit A", and (b) a Jefferson Parish map on which is printed the purported population of each precinct of Jefferson Parish, marked "Exhibit B". [Omitted from published opinion]

Apart from the reservations expressed above, the Court is reluctant to render any additional judgment which would disrupt the impending election in Jefferson Parish. The Council plan approved by the Court is not a perfect plan by any means, particularly in the light of the revised figures presented to the Court today. The Court certainly believes that a more exact reapportionment could be obtained through an extensive legislative consideration of the issues here and that the formulation of a better plan should result from an assiduous and careful consideration of the problem by the Council and not from the hasty and hectic last minute scurrying which gave painful birth to the present plan. Nevertheless, the plan falls within constitutional limitations and is an appropriate vehicle by which the Parish may conduct its upcoming election. Furthermore, inasmuch as the Council, which has knowledge of the discrepancy in the figures which it submitted to the Court, has taken no action to seek amendment of the judgment of August 12, 1971 and the Court is powerless to take action on its own to reduce the present disparity between Districts 1 and 2, and since the qualification of candidates for the offices of district representative has now commenced, the Court, under all the circumstances outlined above, will adhere to its judgment of August 12, 1971.

In its selection of the Council plan, the Court is aware that Section 2.02 of the Jefferson Parish Home Rule Charter provides that redistricting can only be accomplished by amending the Charter by voter approval. The failure of the Jefferson Parish Council to properly and timely call for an election, however, has, as a practical matter, made this procedure impossible, and it is therefore legally in-

cumbent upon the Court to choose a plan. The Court, in an effort to give as much weight as possible to the representative legislative body of Jefferson Parish, chose that plan which was unanimously adopted by the Council.

The Court cannot emphasize strongly enough its opinion that reapportionment is primarily a matter for legislative consideration. Reynolds v. Sims, supra. The population of Jefferson Parish has increased substantially over the past decade, and a consideration of the growth potential of the Parish would certainly indicate that population will continue to increase. As the population increases, the Parish will face a continuous duty to reapportion itself to accommodate population growth. It is the Court's opinion that the best interests of the citizens of Jefferson Parish would be served if the Council would recognize that reapportionment is its continuing obligation and that reapportionment is best accomplished through voter approval of carefully formulated proposals and not through a last minute desperate resort to the Federal Courts.