Paul W. PREISLER, (Plaintiff) Appellant,

v.

Warren E. HEARNES, Secretary of State of the State of Missouri, and Thomas F. Eagleton, Attorney-General of the State of Missouri, (Defendants) Respondents.

No. 49370.

Supreme Court of Missouri,

En Banc.

Dec. 11, 1962.

 

Paul W. Preisler, St. Louis, appellant, pro se.

Thomas F. Eagleton, Atty. Gen., Joseph Nessenfeld and Wayne W. Waldo, Asst. Attys. Gen., Jefferson City, for respondents.

HYDE, Judge.

Action for declaratory judgment to determine the validity of Chapter 128, Secs. 128.202–128.305, RSMo Cum.Supp.1961, dividing the state into ten congressional districts, enacted by the 71st General Assembly, hereinafter called "the 1961 Act". The trial court found against plaintiff's claims and declared the Act valid and constitutional and that plaintiff had "no right to vote for the nomination or election of Representatives in Congress from Missouri from the state at large, or to become a candidate for nomination to the office of Representative in Congress from the state at large." Plaintiff has abandoned the latter claim in this Court because this case was submitted after the 1962 primary election.

An act creating ten congressional districts was necessary because under the Decennial Census of 1960 the number of Representatives in Congress from Missouri was reduced from eleven to ten. Plaintiff contends that the 1961 Act violates Sec. 45, Art. III, Missouri Constitution, V.A.M.S., claiming the districts established are grossly unequal in population and composed of irregular noncompact territory; and that the Act violates the 14th Amendment to the United States Constitution, and Sec. 2, Art. I of the Missouri Constitution, claiming the influence of his vote in the district of his residence is not equal to that of the individual voter in other districts of the state, depriving him of equal protection of the laws. For these reasons, plaintiff further contends there are no valid districts and that he has the right to vote for the nomination and election of Representatives in Congress from the State at large. Plaintiff cites U.S. Code, Title 2, Sec. 2a(c), as follows: "Until a State is redistricted in

the manner provided by the law thereof after any apportionment, the Representatives to which such State is entitled under such apportionment shall be elected in the following manner: * * * (5) if there is a decrease in the number of Representatives and the number of districts in such State exceeds such decreased number of Representatives, they shall be elected from the State at large." Plaintiff claims this provision applies because he says there has been no valid redistricting law enacted. Plaintiff is a resident of the Third district.

The population of the state, the districts established by the 1961 Act and their variation over and under one-tenth of the state total is as follows:

| Districts | Population | Differs from average of 431,981 by | Per Cent of State Population |
|---|---|---|---|
| First | 466,482 | + 34,501 | .107 |
| Second | 506,854 | + 74,873 | .117 |
| Third | 480,222 | + 48,241 | .111 |
| Fourth | 418,981 | — 13,000 | .096 |
| Fifth | 378,499 | — 53,482 | .087 |
| Sixth | 388,486 | — 43,495 | .089 |
| Seventh | 436,933 | + 4,952 | .101 |
| Eighth | 452,385 | + 20,404 | .104 |
| Ninth | 409,369 | — 22,612 | .094 |
| Tenth | 381,602 | — 50,379 | .088 |
| State Total | 4,319,813 (to balance) — 3 | | |
| (For fractions not included to balance 100%) | | | .006 |

Defendants contend the provisions of Sec. 45, Art. III, Mo. Constitution, are not mandatory requirements for the Legislature because of Sec. 4, Art. I, of the U. S. Constitution, which they say places no such restrictions on the Legislature. However, these requirements would surely be relevant to the claim of violation of equal protection of the laws and because of the view we take we will not discuss that contention but decide this case on the assumption of its applicability. Sec. 45, provides that, after each decennial census "the general assembly shall by law divide the state into districts corresponding with the number of representatives to which it is entitled, which districts shall be composed of contiguous territory as compact and as nearly equal in population as may be." Our Constitution makes the same requirements for state senatorial districts, Secs. 5 and 8, Art. III, Mo.Const.; and Sec. 7, Art. III, providing for a commission to make the decennial reapportionment provides that "the population of no district shall vary from the quotient by more than one-fourth thereof." While this does not mean that variations so great would always be a fair redistricting, especially if combined with violation of the requirement of compactness, it does provide maximum and minimum standards which must not be exceeded and has some bearing upon the meaning of the requirement of "as nearly equal in population as may be."

Plaintiff mainly relies on Preisler v. Doherty, 365 Mo. 460, 284 S.W.2d 427 (and cases therein cited), in which we held invalid a senatorial redistricting by the Board of Election Commissioners of the City of St. Louis. However, we pointed out in that case: "[W]e are not dealing with a law enacted by our General Assembly, which as a coordinate branch of our government has

all of the legislative power of the State except that denied it by express limitations of the Constitution. * * * [I]n this case, we are considering acts of administrative officers who have been delegated very limited legislative power for a single purpose, namely: to divide the City into senatorial districts 'of contiguous territory, as compact and nearly equal in population as may be.' There is even good authority for proceeding against such officers by mandamus when they have not followed mandatory constitutional provisions in districting."

Nevertheless, in that case we also stated: "It is well settled that courts have jurisdiction and authority to pass upon the validity of legislative acts apportioning the state into senatorial or other election districts and to declare them invalid for failure to observe non-discretionary limitations imposed by the Constitution. State ex rel. Barrett v. Hitchcock, 241 Mo. 433, loc. cit. 473, 146 S.W. 40, loc. cit. 53 and cases cited; Annotation A.L.R. 1337; 18 Am.Jur. 191–201, Secs. 16–31; 16 C.J.S. Constitutional Law, § 147 p. 438. See also Jones v. Freeman, 193 Okl. 554, 146 P.2d 564, loc. cit. 570, stating that the courts of 38 states had exercised this power. However, as these authorities show, the courts may not interfere with the wide discretion which the Legislature has in making apportionments for establishing such districts when legislative discretion has been exercised. It is only when constitutional limitations placed upon the discretion of the Legislature have been wholly ignored and completely disregarded in creating districts that courts will declare them to be void. In such a case, discretion has not been exercised and the action is an arbitrary exercise of power without any reasonable or constitutional basis. As said in a leading case, State ex rel. Lamb v. Cunningham, 83 Wis. 90, 53 N.W. 35, 55, 17 L.R.A. 145: 'If, as in this case, there is such a wide and bold departure from this constitutional rule that it cannot possibly be justified by the exercise of any judgment or discretion, and that evinces an intention on the part of the legislature to utterly ignore and disregard the rule of the constitution in order to promote some other object than a constitutional apportionment, then the conclusion is inevitable that the legislature did not use any judgment or discretion whatever.' Likewise, In re Sherill, 188 N.Y. 185, 81 N.E. 124, 128, the Court said: 'But, if the Legislature under the assumption of an exercise of discretion does a thing which is a mere assumption of arbitrary power, and which, in view of the provisions of the Constitution, is beyond all reasonable controversy, a gross and deliberate violation of the plain intent of the Constitution, and a disregard of its spirit and the purpose for which express limitations are included therein, such act is not the exercise of discretion, but a reckless disregard of that discretion which is intended by the Constitution. Such an exercise of arbitrary power is not by authority of the people. It is an assumption, and, when it is claimed that an act is thus in violation of the Constitution, a question of law is presented for the determination of this court.' Thus, in the matter of districting, as well as in other matters, the Legislature has no authority to enact unconstitutional laws."

Plaintiff also strongly relies on Brown v. Saunders, 159 Va. 28, 166 S.E. 105, in which a congressional redistricting was held invalid. In that case, because of the 1930 census, the number of Representatives in Congress to which Virginia was entitled was reduced from ten to nine. Virginia had been entitled to ten representatives since 1880 and the last changes in districts had been 20 years before, after the 1910 census. The court said, because of the inequality of representation, the result appeared arbitrary and noted that the Governor refused to sign the bill. (One 1961 Act was signed by the Governor.) One district had population more than one-fourth greater than the quotient of one-ninth of the population of the state while another was much more than one-fourth below the quotient. Two others showed

almost as much disparity. The Court said: "It appears that no bona fide effort was made to divide the state into nine districts containing as near as practicable an equal number of inhabitants." It said that instead all counties and cities (except three counties of small population transferred to another district) of two old districts were placed together in one district making it contain one-fourth the area and one-seventh of the population of the state, *with no changes being made in any other districts,* although the population of the largest was almost double that of the smallest due to population changes in the preceding 20 years.

Plaintiff's main complaint seems to be that all three districts in St. Louis area (the City of St. Louis and St. Louis County) are above the state quotient in population. However, the St. Louis area had three Congressmen 40 years ago when the rest of the state had 13 (Secs. 10712–10728, R.S. 1929); 30 years ago when the state's representation was reduced to 13, the St. Louis area was given three and the rest of the state ten (Secs. 12296–12309, R.S.1939, and Secs. 128.210–128.330, R.S.1949); likewise ten years ago when the state's representation was reduced to 11, the St. Louis area retained three and the rest of the state had eight. (Secs. 128.201–128.311, R.S. 1959.) Under the 1961 Act, the St. Louis area still has three and the rest of the state seven. Thus all of the reduction in representation consistently has been in the state outside the St. Louis area, and therefore the representation of the St. Louis area has been proportionately increased after each reduction in the state's representation. It is also to be noted that the largest of the St. Louis area districts is less than two per cent above the ten per cent of the population of the state, which would be the exact proportion for absolute equality. Furthermore the St. Louis area as a whole has 30% of the state's representation in Congress and its population is less than 34% of the state's population. This is far different from the situation in Baker v. Carr, 369

U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663, where differences went as high as 19 to 1 (concurring opinion of Justice Douglas, 82 S. Ct. l. c. 725) with no reapportionment in 60 years; or in Colegrove v. Green, 328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432, where although no reapportionment had been made since 1901 and the difference in population of congressional districts ranged from six to one to almost nine to one, the Supreme Court did not hold the districts were invalid. In the Kentucky case cited by plaintiff, Stiglitz v. Schardien, 239 Ky. 799, 40 S.W.2d 315, disparity of population of districts reached 6 to 1, with many districts given at least twice the representation to which they were entitled and others only about half. As hereinabove shown no district established by the 1961 Act was as much as two per cent above ten per cent of the population of the state and the lowest only about 1¼% below it. Certainly this does not show an irrational disregard of any standard of apportionment or an "invidious discrimination". See Baker v. Carr, supra, 82 S.Ct. l. c. 705, 725. This situation is also very different from that in State ex rel. Barrett v. Hitchcock, 241 Mo. 433, 475, 146 S.W. 40, where the population of St. Louis divided by the state quotient entitled the City to one more senator than it was given in the redistricting of the state.

■ Another suggestion of plaintiff is that compactness and equality of population could better be obtained by dividing counties. However, counties are important governmental units, in which the people are accustomed to working together. Therefore, it has always been the policy of this state, in creating districts of more than one county (congressional, judicial or senatorial) to have them composed of entire counties. Sec. 5, Art. III, Mo.Const., specifically provides that "no county shall be divided" in making senatorial districts of more than one county. We must hold that it was proper for the legislature to follow this policy. In fact, to do otherwise could lead to the most vicious kind of gerry-

mander. The only departure therefrom in the 1961 Act was in our two largest cities, St. Louis and Kansas City. The northernmost St. Louis District (First) includes both city wards and county townships. In the Kansas City district (Fifth) all but four city wards and a Jackson County area between the south city limits and the southern boundary of the county (most of which is to be annexed to Kansas City) are included; the rest of Jackson County (containing a number of smaller cities) is in the Fourth district with seven other counties. Urban conditions may justify this treatment.

▄▄▄ All of the districts established by the 1961 Act are reasonably compact except the Tenth, although the Eighth, Ninth as well as Tenth could have been improved in that respect by adjustments of counties between the Eighth and Ninth (and also either the Fourth or Sixth) on the north and between the Eighth and Tenth on the south and east. However, there are no shoe string districts such as some in Missouri forty years ago, when there were 16 districts, before Sec. 45, Art. III, was added to our Constitution. The 1961 Act did not attempt to reduce the number of districts by one, as did the 1932 Virginia Act, by putting two districts together and leaving the others unchanged without regard to population changes of 20 years. Our former Eleventh district was composed of 17 counties. Of these, by the 1961 Act one was added to the Fourth district, one was added to the Ninth district, two were added to the Sixth district, three were added to the Seventh district, and the remaining ten placed in the Eighth district. However, the former Eighth district was reduced by placing one of its counties in the Ninth district and four in the Tenth district. Although the Tenth district is less compact than previously, this is due to adding two of these counties to the north and two of these counties on the southwest. Plaintiff says that if counties to the west of the north part of the district had been added

instead of the two farther south the Tenth district could have been made more compact. While this is true, the two counties to the west chosen added more to the population of the Tenth district than would the two counties suggested by plaintiff and thus brought it nearer the quotient. We cannot say this was an abuse of legislative discretion to provide more population rather than better compactness. While both compactness and population of the Tenth district could have been aided by also adding these counties plaintiff mentions and others adjoining them it must be realized that every member of the Legislature has his own views (as do his constituents) as to the district in which his county (and others with which his county has previously been associated in a congressional district) should be placed and it is not improper to consider the precedents of allocation of counties to existing districts in deciding the composition of new enlarged districts. Very likely each legislator individually would draw somewhat different district lines. Therefore, any redistricting agreed upon must always be a compromise. Mathematical exactness is not required or in fact obtainable and a compromise, for which there is any reasonable basis, is an exercise of legislative discretion that the courts must respect. Furthermore, the people of this state have a remedy for even valid redistricting, which they do not like, through our initiative and referendum provisions. Secs. 49–53, Art. III, Mo.Const. As above stated, it is only when constitutional limitations are completely disregarded, resulting in an arbitrary exercise of power that cannot be justified by exercise of judgment or discretion but obviously done to promote some other object than constitutional apportionment, that the courts will declare the Act unconstitutional. For the reasons we have stated, we do not find that situation here.

The judgment is affirmed.

All concur.