Del C. PREISLER et al.,
Plaintiffs-Respondents,

v.

James C. KIRKPATRICK, Secretary of
State, Defendant-Appellant.

No. 59049.

Supreme Court of Missouri, En Banc.

Sept. 8, 1975.

Irving Achtenberg, David Achtenberg, Kansas City, for plaintiffs-respondents.

John C. Danforth, Atty. Gen., Andrew Rothschild, Asst. Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for defendant-appellant.

HENLEY, Judge.

Del C. Preisler et al. (plaintiffs) sought by their petition (1) a judgment declaring unconstitutional existing senatorial districts on the sole ground that they are not com-

pact; [1] (2) a decree enjoining the Secretary of State (defendant) from taking any action with respect to elections for the state senate until the senatorial districts are reapportioned in accordance with Mo.Const. Art. III, § 5; [2] and (3) an order by which the trial court would retain jurisdiction to (a) examine and approve or disapprove, and enforce its orders in connection with, any new reapportionment; and (b) fix and allow attorney fees to plaintiffs. Judgment was for plaintiffs on (1) and (2), and defendant appealed. The judgment fails to mention (3) and plaintiffs, treating this failure as a judgment denying the relief sought therein, have cross-appealed.

The case was submitted to the trial court on the pleadings, a two-part stipulation of facts, and exhibits consisting mostly of maps showing the boundaries of the districts.

In February, 1971, the Governor of Missouri, acting pursuant to Mo.Const. Art. III, § 7, appointed a Senatorial Redistricting Commission (Commission) to reapportion and establish the numbers and boundaries of the thirty-four senatorial districts of the state.[3] Thereafter, on August 30, 1971, the Commission filed its report with defendant. The report stated, inter alia, the results of its reapportionment of the districts with a description of the boundaries established and the number assigned each district.

The Commission allotted twelve districts to the St. Louis area, comprising St. Louis city, St. Louis county and St. Charles county; five to Jackson county (Kansas City area); and the remaining seventeen districts to the rest of the state. The boundaries of thirty-one districts follow county lines; only three districts cross county lines. Those crossing county lines are: district 1, part of which is in the city and part in the county of St. Louis; district 2, part of which is in St. Louis county and part in St. Charles county; and, district 33, consisting of nine counties and a small portion of Greene county immediately below the southeast corner of Polk county.

The report of the Commission does not contain a statement of its reasons for the location of the boundary lines of the several districts. The parties agree that the shapes of the districts are not the result of physical features of the areas involved and appear to agree that there is no evidence that any historical factors were considered. There is no evidence bearing upon the reasons or motives of the Commission for the location of any part of the boundary line of any district.

1. The constitutionality of these districts was first challenged in *Watkins et al. v. Kirkpatrick, Secretary of State,* No. 20148–1 in the United States District Court for the Western District of Missouri, Western Division, in which the instant plaintiffs intervened as parties plaintiff. The challenge in that case was that the districts as apportioned in 1971 violated (1) the Fourteenth Amendment "one man, one vote" requirement and were racially discriminatory; and (2) the requirement of the state constitution that they be "as compact * * * as may be." The district court found against plaintiffs on the federal constitutional claims and exercised its discretion to not rule on the claim that the districts do not meet the state constitutional requirement of "compactness." That judgment (dated December 17, 1973, but not reported) was not appealed from and is final.

2. Article III, § 5 reads: "The Senate shall consist of thirty-four members elected by the qualified voters of the respective districts for four years. For the election of senators, the state shall be divided into convenient districts of contiguous territory, as compact and nearly equal in population as may be."

3. Section 7 of Article III reads, in part: "The commission shall reapportion the senatorial districts by dividing the population of the state by the number thirty-four and shall establish each district so that the population of that district shall, as nearly as possible, equal that figure; no county lines shall be crossed except when necessary to add sufficient population to a multi-district county or city to complete only one district which lies partly within such multi-district county or city so as to be as nearly equal as practicable in population. Any county with a population in excess of the quotient obtained by dividing the population of the state by the number thirty-four is hereby declared to be a multi-district county."

The trial court found only that "the Senate Districts * * * are * * * in violation of Article III, Section 5, * * * in that they are not compact." The court was not requested to do so and did not make and file findings of fact as to any of the districts or state any reasons why it found the districts not compact.

The 1970 decennial census shows Missouri's population, according to stipulation exhibit 6, to be 4,677,399. The location of that population in the counties of the state is shown by stipulation exhibit 12 (a map from page 1420 of the 1971–72 Official Manual of Missouri), attached to this opinion as appendix 1.

The 1970 population of 4,677,399 divided by 34 (the number of senators, Art. III, § 5) produces the quotient of 137,570 (the number of persons per senator, or the population figure each district is required to equal "as nearly as possible"). The numbers of the districts, as established by the 1971 reapportionment, the population of each, and the percentage of variation of that population from the ideal 137,570 persons are shown on stipulation exhibit 6, attached as appendix 2.

A map showing the boundaries of the districts, as apportioned in 1971, except the twelve districts allotted to the St. Louis area and the five allotted to Jackson county, is attached as appendix 3.

A map showing the boundaries of the districts (districts 3, 4, 5, 6 and a part of district 1), as apportioned in 1971, located in the city and county of St. Louis, is attached as appendix 4.

A map showing the boundaries of the districts (districts 7, 13, 14, 15, 24, 26) located wholly within St. Louis county, that part of district 1 in St. Louis county which adjoins the part of that district in St. Louis

city, and that part of district 2 in St. Louis county which adjoins the part of that district in St. Charles county is attached as appendix 5.

A map showing the boundaries of the districts (districts 8, 9, 10, 11 and 16), as apportioned in 1971, located in Jackson county, is attached as appendix 6.

A map showing the boundaries of the districts (district 30 and part of district 33), as apportioned in 1971, located in Greene county, is attached as appendix 7.

As stated, the sole question presented is whether the senatorial districts established by the Commission violate the requirement of Mo.Const. Art. III, § 5, that they be "as compact * * * as may be." We are concerned with the constitutional requirements that they be of contiguous territory and as nearly equal in population as may be[4] only insofar as those requirements may have affected or influenced the "compactness" requirement. Another factor with which we are concerned in connection with the compactness question is the requirement of our constitution that county lines be followed, except when absolutely necessary to cross them for the purpose stated in Article III, § 7, quoted in footnote 3.

In *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) the United States Supreme Court, holding that a state legislature must be apportioned on a population basis, said: " * * * the Equal Protection Clause requires that a State make an honest and good faith effort to construct districts, in both houses of its legislature, as nearly of equal population as is practicable. We realize that it is a practical impossibility to arrange legislative districts so that each one has an identical number of residents, or citizens, or voters. Mathematical exactness

---

**4.** It is undisputed that the districts established by the Commission meet the "contiguous territory" requirement. Clearly, no part of any district is physically separate from any other part. The federal district court has, as previously noted, decided against these plaintiffs the federal question

of whether the districts meet the requirement of substantial equality of population. Apparently, plaintiffs are satisfied with that determination and for that reason did not raise any question as to the state requirement of "equal population" in this case.

or precision is hardly a workable constitutional requirement." 377 U.S. at 577, 84 S.Ct. at 1390.

The court recognized in *Reynolds v. Sims,* supra, that factors in addition to "equality of population" properly may be considered in reapportionment of state legislative districts: "A State may legitimately desire to maintain the integrity of various political subdivisions, insofar as possible, and provide for compact districts of contiguous territory in designing a legislative apportionment scheme. Valid considerations may underlie such aims. Indiscriminate districting, without any regard for political subdivision or natural or historical boundary lines, may be little more than an open invitation to partisan gerrymandering." 377 U.S. 578–579, 84 S.Ct. 1390. See also: *Mahan v. Howell,* 410 U.S. 315, 321–322, 93 S.Ct. 979, 35 L.Ed.2d 320 (1973); *Preisler v. Hearnes,* 362 S.W.2d 552, 556[2] (Mo. banc 1962). But the court emphasized that in accomplishing the state's requirements, "* * * the overriding objective must be substantial equality of population among the various districts, so that the vote of any citizen is approximately equal in weight to that of any other citizen in the State." 377 U.S. at 579, 84 S.Ct. at 1390.

In *Preisler v. Doherty,* 284 S.W.2d 427[7, 8] (Mo. banc 1955) the court said, page 435: "Certainly the framers of the Constitution did not intend for senatorial districts to be laid out according to the free will and caprice of the officers charged with that duty. The requirements of contiguity and compactness were placed there for a purpose. Our original Constitution of 1820 did not contain them. See Sec. 6, Art. III, Const. 1820, 1 V.A.M.S. p. 79. No doubt they were found to be necessary to the preservation of true representative government and they appear in the 1875 Constitution in substantially the same form as in the present Constitution. See Secs. 5, 6 and 9, Art. IV, Const.1875, 1 V.A.M.S. pp. 177–179. It has been stated that the purpose of these requirements was ' "to guard, as far as practicable, under the system of representation adopted, against a legislative evil, commonly known as the 'gerrymander,' and to require the Legislature to form districts, not only of contiguous, but of compact or closely united, territory." ' *State ex rel. Barrett v. Hitchcock,* supra, 241 Mo. loc. cit. 497, 146 S.W. loc. cit. 61; See also 2 A.L.R. 1337."

*Preisler v. Hearnes,* supra, the last word of this court on the "compactness" issue, involved an attack upon the validity of a 1961 legislative act redistricting Missouri's ten congressional districts. Quoting from *Preisler v. Doherty,* supra, the court said: "It is well settled that courts have jurisdiction and authority to pass upon the validity of legislative acts apportioning the state into senatorial or other election districts and to declare them invalid for failure to observe non-discretionary limitations imposed by the Constitution. *State ex rel. Barrett v. Hitchcock,* 241 Mo. 433, loc. cit. 473, 146 S.W. 40, loc. cit. 53 and cases cited; Annotation A.L.R. 1337; 18 Am.Jur. 191–201, Secs. 16–31; 16 C.J.S. Constitutional Law § 147, p. 438. See also *Jones v. Freeman,* 193 Okl. 554, 146 P.2d 564, loc. cit. 570, stating that the courts of 38 states had exercised this power. However, as these authorities show, the courts may not interfere with the wide discretion which the Legislature has in making apportionments for establishing such districts when legislative discretion has been exercised. It is only when constitutional limitations placed upon the discretion of the Legislature have been wholly ignored and completely disregarded in creating districts that courts will declare them to be void. In such a case, discretion has not been exercised and the action is an arbitrary exercise of power without any reasonable or constitutional basis. As said in a leading case, *State ex rel. Lamb v. Cunningham,* 83 Wis. 90, 53 N.W. 35, 55, 17 L.R.A. 145: 'If, as in this case, there is such a wide and bold departure from this constitutional rule that it cannot possibly be justified by the exercise of any judgment or discretion, and that evinces an intention on the part of the legislature to utterly ignore and disregard the rule of the

constitution in order to promote some other object than a constitutional apportionment, then the conclusion is inevitable that the legislature did not use any judgment or discretion whatever.'" 362 S.W.2d at 555.

To this the court added, however, that " * * * it is only when constitutional limitations are completely disregarded, resulting in an arbitrary exercise of power that cannot be justified by exercise of judgment or discretion but obviously done to promote some other object than constitutional apportionment, that the courts will declare the Act unconstitutional." 362 S.W.2d at 557.

In that case the court approved a reapportionment plan in which the compactness of at least three districts of the ten could have been improved by the adjustment of counties between districts and where one of those three districts was said to be not "reasonably" compact. Despite the fact that adding two counties to that district would have aided its compactness (as well as equality of population), the court found that the body charged with redistricting did not ignore or disregard the constitutional requirements but instead had exercised its discretion and judgment to establish districts, a substantial number of which were reasonably compact.

Plaintiffs contend and defendant concedes that district 6, in the city of St. Louis, does not meet the compactness requirement. We agree. Plaintiffs contend also that none of the remaining thirty-three districts meet the compactness requirement of the state constitution, and in connection with some they proceed to demonstrate how easily, they think, those districts could be improved upon and made more compact. We agree that the changes they suggest would make some of those districts more compact, but that is not to say we would agree that the districts as established, the overall apportionment of the state into senatorial districts by the Commission, does not substantially meet the compactness requirement of the constitution.

It must be recognized that there will be some degree of unavoidable noncompactness in any apportionment of this state into 34 senatorial districts. The county lines do not lend themselves to perfect compactness. The population density of the state is, of course, uneven and any effort to accomplish both the overriding objective of substantial equality of population and the preservation of county lines reasonably may be expected to result in the establishment of districts that are not esthetically pleasing models of geometric compactness. It is also true that the population density is uneven in the two metropolitan areas and a good faith effort to adhere to all constitutional requirements will still produce some districts in those areas, the boundary lines of which will have stair-step shape as well as the straight lines of urban blocks and suburban and urban census districts, and the sweeping curves of major thoroughfares. It has been said that only a district having the shape of a square or a circle can be so compact that it cannot be made more so. *State ex rel. Barrett v. Hitchcock,* 241 Mo. 433, 146 S.W. 40, 62 (1912).

We would remind the parties (and ourselves) that whatever the body charged with the responsibility of reapportionment of the state into districts (whether it be the Legislature or a Commission) it is made up of fallible human beings; that no matter how compact in shape or equal in population the districts they establish may be, none will be so perfect that there will not be room for improvement; that there will always be those with knowledge of and interest in the subject, who, unhampered by the experience of having had to work closely with the overall plan and with shaping and fitting into that plan each individual district thereof, can improve upon what has been done.

We find, and hold, that the Commission made an honest and good faith effort to construct senatorial districts as compact as may be; that all districts, except the sixth in St. Louis, and the 33rd because

it thrusts a narrow appendage from the middle of its body into the heart of Greene county, are within acceptable limits of compactness. We also find, and hold, that considering the overall, state-wide plan developed by the Commission the districts established substantially comply with the compactness requirement of § 5 of Article III. Accordingly, the judgment of the trial court must be reversed.

■ Plaintiffs assert in their cross-appeal that the trial court should have retained jurisdiction of the case (1) to expedite the implementation of any final judgment ordering reapportionment; and (2) to fix and allow attorneys' fees. Plaintiffs state in their argument: "The question of costs and attorney fees is an issue in this case only if the judgment of the trial court is sustained on the merits." Since the judgment on the main issue is reversed, the question of retention of jurisdiction for the purposes mentioned is moot.

The judgment for plaintiffs for declaratory and injunctive relief is reversed. The judgment against plaintiffs on their prayer for costs and attorneys' fees is affirmed. The cause is remanded with directions that the court enter judgment consistent with this opinion, and that it set aside its decree enjoining defendant from taking any action with respect to elections for the state senate.

MORGAN, HOLMAN, BARDGETT and DONNELLY, JJ., concur.

FINCH, J., dissents in separate dissenting opinion filed.

SEILER, C. J., dissents and concurs in separate dissenting opinion of FINCH, J.

## APPENDIX 1

Missouri's AREA and POPULATION by Counties

## APPENDIX 2

| DISTRICT | POPULATION | VARIATION |
|----------|------------|-----------|
| 1 | 138,812 | + .90% |
| 2 | 138,038 | + .34% |
| 3 | 138,917 | + .98% |
| 4 | 138,042 | + .34% |
| 5 | 137,575 | .00% |
| 6 | 137,309 | - .19% |
| 7 | 139,987 | + 1.8 % |
| 8 | 131,001 | - 4.8 % |
| 9 | 131,045 | - 4.7 % |
| 10 | 130,761 | - 4.9 % |
| 11 | 130,932 | - 4.8 % |
| 12 | 143,514 | + 4.3 % |
| 13 | 139,183 | + 1.2 % |
| 14 | 139,838 | + 1.6 % |
| 15 | 139,957 | + 1.7 % |
| 16 | 130,819 | - 4.9 % |
| 17 | 136,106 | - 1.1 % |
| 18 | 138,609 | + .76% |
| 19 | 139,856 | + 1.7 % |
| 20 | 142,834 | + 3.8 % |
| 21 | 137,625 | + .04% |
| 22 | 141,149 | + 2.6 % |
| 23 | 136,959 | - .44% |
| 24 | 139,441 | + 1.4 % |
| 25 | 142,835 | + 3.8 % |
| 26 | 139,444 | + 1.4 % |
| 27 | 136,400 | - .85% |
| 28 | 138,636 | + .77% |
| 29 | 139,080 | + 1.1 % |
| 30 | 134,442 | - 2.3 % |
| 31 | 134,271 | - 2.4 % |
| 32 | 137,338 | - .17% |
| 33 | 142,283 | + 3.4 % |
| 34 | 134,361 | - 2.3 % |

APPENDIX 3

APPENDIX 4

APPENDIX 5

APPENDIX 6

SENATE DISTRICTS FOR JACKSON COUNTY

Plaintiffs' Exhibit 4

APPENDIX 7

## PRESENT DISTRICTS LOCATED IN GREENE COUNTY

GREENE COUNTY
MISSOURI

FINCH, Judge (dissenting).

I respectfully dissent. The principal opinion concludes that Districts 6 and 33 are not compact as required by the Constitution but holds that since in its view the remaining districts are within acceptable limits of compactness, the plan as a whole complies with the compactness requirement established by Art. III, § 5, Mo.Const.

I cannot agree with that conclusion. In my view when Art. III, § 5 says that in establishing the prescribed 34 senatorial districts, "the state shall be divided into convenient districts of *contiguous* territory, as *compact* and *nearly equal in population* as may be," (emphasis supplied) *it applies all three of these standards to all of the 34 districts,* not just to some or most of them. For example, suppose that 33 of the districts consisted of contiguous territory but one district was made up of two segments separated by an intervening district. Can there by any doubt but that the establishment of that one non-contiguous district would constitute a violation of Art. III, § 5 and make the plan bad? Would we paraphrase what the principal opinion says with reference to the compactness requirement and say that the commission made a good faith effort to make districts contiguous and actually made all but one contiguous districts, and, therefore, the plan complies with that requirement of Art. III, § 5? I think not.

Or suppose that 33 of the districts were approximately equal in size but that the 34th district had only one-third or one-half as many people as the other 33 districts. Isn't it clear that such a district could not be permitted to stand and that its existence would make the plan bad and require redistricting?

If the above assumptions are correct, and I believe they are, then the mandate of Art. III, § 5 also means that the plan must contain districts, none of which are in clear violation of the compactness requirement. There is not one word in Art. III, § 5 which indicates to the contrary. This does not mean that the Constitution requires perfect compactness any more than it requires exact equality of population because by the nature of things, some stair-step shapes and irregular lines will be inevitable. For example, county lines do not lend themselves to perfect compactness. It also must be subject to the fact that the courts have held that the requirement of equality in population takes precedence, and that, to the extent necessary, whatever irregularity is required to achieve population balance is permissible. There also may be some irregularity as the result of physical factors of areas involved or because of historical factors. However, subject to those qualifications, Art. III, § 5, in my judgment, applies to all districts and requires all of them to be as compact as may be.

Does the plan in question meet that standard? Clearly not. District 6 in the City of St. Louis runs from the northern city limit to within a few miles of the southern city limit. For two-thirds of its length, it hugs the Mississippi River. It then turns west after which it continues south on a path several miles from the river. It is 19.8 miles long and narrows at one point to only 0.4 miles in width.[1] In appearance it resembles a mountainous "S" curve, a corkscrew or a twisted shoestring. The principal opinion holds that District 6 does not meet the compactness requirement of Art. III, § 5. With reference to this district, appellant's brief states: "We will not attempt to defend District 6. It would be absurd to claim that this district meets anybody's standard of compactness." What more need be or can be said? Nor is any reason or excuse therefor shown. As the principal opinion points out, "[T]he parties agree that the shapes of the districts are not the result of physical features of the areas involved and appear to agree that there is no evidence that any historical factors were considered." This being true, how can a plan be permitted to stand when

---

1. This district is shown on Appendix 4 to the principal opinion.

it contains a district like No. 6 which so patently and admittedly violates Art. III, § 5?

But that isn't all. The principal opinion holds that District 33[2] also violates the compactness requirement of Art. III, § 5. Furthermore, there are other districts, attacked by respondents, which I find not "as compact * * * as may be." By this I do not mean districts which could just be improved so as to be more nearly compact. I have reference to districts which are not compact within the meaning of Art. III, § 5. For example, District 1,[3] which is located partially in the City of St. Louis and partially in St. Louis County, is 18.6 miles long and at its narrowest point is only 0.8 miles wide. Its shape defies description. In my judgment, it, like District 6, would not meet anybody's standard of compactness. Its existence furnishes an additional reason for holding, as did the trial court, that the existing plan violates the compactness requirement of Art. III, § 5.

Respondents also attack the compactness of at least 9 other districts. I will not lengthen this dissent by discussing or even referring to all of them, but it is clear that Districts 9 and 10[4] in Jackson County, District 12[5] which extends across the northern portion of the state, District 34[5] in the northwest section of the state, and District 29[5] which extends along much of the southern border are not reasonably compact.

Appellants have offered no evidence to justify the lack of compactness in any of these districts, nor to demonstrate any reason why the commission could not have complied with the requirements of Art. III,

§ 5. In my view, that burden rested on them[6] when, as here, lack of compactness in fact exists and it is recognized that this was not brought about as the result of physical features or historical consideration and there is nothing to show it was to achieve equality in population.

In the opening paragraph of the argument section of appellant's brief herein appears this sentence: "It is hoped that the resulting decision will serve as a guide to future redistricting commissions." The principal opinion does just that. It says to them that absent an affirmative showing of bad faith or improper motive by the commission, their plan will be approved, insofar as the compactness requirement of Art. III, § 5, is concerned, if most of the districts are reasonably compact and that this will be true even if one or more of the districts look like an elongated "S" or a twisted shoestring and are so lacking in compactness that they do not meet "anybody's standard of compactness."

I cannot concur in such a message. If a plan containing Districts 6, 1 and 33 (even forgetting the others) can be permitted to stand, then as a New York court said in the case of *In re Livingston,* 96 Misc. 341, 160 N.Y.S. 462, 470 (1916), in holding bad a legislative districting plan in the City of New York, "* * * If the apportionment of a district of this shape can be upheld, when no other constitutional provision makes its shape necessary, then the provision as to compactness serves no purpose. * * * *"

The position I espouse is, in my judgment, consistent with the earlier opinions

---

2. This district is shown on Appendix 7 to the principal opinion.

3. This district is shown on Appendix 5 to the principal opinion.

4. These districts are shown on Appendix 6 to the principal opinion.

5. These districts are shown on Appendix 4 to the principal opinion.

6. It is well established that the burden of justifying deviations from parity in population is on the state. *Swann v. Adams,* 385 U.S. 440, 445, 446, 87 S.Ct. 569, 17 L.Ed.2d

501 (1967); *Dinis v. Volpe,* 264 F.Supp. 425, 430 (D.Mass.1967), affirmed 389 U.S. 570, 88 S.Ct. 696, 19 L.Ed.2d 785 (1967); *Maryland Citizens Committee for Fair Congressional Redistricting, Inc. v. Tawes,* 226 F.Supp. 80 (D.Md.1964). There is no reason why the rule should be different with respect to explaining and justifying a lack of compactness. The case of *Noun v. Turner,* 193 N.W.2d 784, 791 (Iowa 1972), holds that this burden is on the state.

by this court involving the issue of compactness of legislative districts. The first of those cases was *State ex rel. Barrett v. Hitchcock,* 241 Mo. 433, 146 S.W. 40 (banc 1912). It was an original proceeding in mandamus to require the circuit judges of the City of St. Louis to redistrict the city into six state senatorial districts. Under the law at that time, the general assembly was to establish senatorial districts, but if it was unable to agree, the duty passed to the governor, the attorney general and the secretary of state. Art. IV, § 7, Mo.Const. 1875. The suit in question sought to put into effect a plan agreed to by two of these officers over the dissent of the governor. This court denied the writ of mandamus for various reasons, one of which was the lack of compactness of some of the districts established by the plan. Maps of those districts are set out in the opinion. 146 S.W. at 55. Comparison thereof with Districts 6 and 1 and even 33 show that the latter are less compact and much less acceptable in shape than those disapproved in *Hitchcock.* Yet the court in *Hitchcock* said, 146 S.W. at 65:

> "We are also of the opinion that the act of apportionment, as before stated, violates the Constitution, in that it does not conform to the provision which requires compactness of counties. At another place, we have set out a map of several of them, which shows a total disregard of this constitutional provision."

The next decision which considered the compactness requirement was *Preisler v. Doherty,* 284 S.W.2d 427 (Mo. banc 1955). It involved a declaratory judgment action seeking a determination of the validity of seven senatorial districts established in the City of St. Louis by the Board of Election Commissioners of that city. The court pointed out that this was districting by an administrative agency, not by the General Assembly, and that the Board of Election Commissioners had been delegated "very limited legislative power for a single purpose, namely: to divide the City into senatorial districts 'of contiguous territory, as

compact and nearly equal in population as may be.'" 284 S.W.2d at 432. The court held the seven districts were not compact and that such deficiencies were not due to physical features of the area. After noting that the requirements as to contiguity and compactness were placed in the Constitution for a purpose, the court said, 284 S.W.2d at 435:

> "* * * There is no discretion to violate mandatory provisions of the Constitution; certainly not by these administrative officers. We must hold that this 1952 redistricting violates the Constitution and is unconstitutional and invalid."

Maps of two of the districts held bad are set out at the end of the opinion. They obviously are not compact but certainly they are not worse, if as bad, as Districts 6 and 1 in the present plan.

The third Missouri case which has considered the question of compactness was *Preisler v. Hearnes,* 362 S.W.2d 552 (Mo. banc 1962). It involved a declaratory judgment suit to determine the validity of the 1961 act which divided, the state into ten congressional districts. The districts were attacked on the basis of alleged lack of uniformity of population and compactness of territory. The court overruled both attacks and held the plan good. However, what the opinion says on the question of compactness is significant. Judge Hyde, who also had written the opinion in *Preisler v. Doherty, supra,* first pointed out that in *Doherty* the court dealt with redistricting by an administrative agency whereas here the redistricting was by the legislature which had somewhat more discretion. He then wrote, 362 S.W.2d at 557:

> "All of the districts established by the 1961 Act are reasonably compact except the Tenth, although the Eighth, Ninth as well as Tenth could have been improved in that respect by adjustments of counties between the Eighth and Ninth (and also either the Fourth or Sixth) on the north and between the Eighth and Tenth on the south and east. *However, there*

**438**

*are no shoe string districts such as some in Missouri forty years ago,* when there were 16 districts, before Sec. 45, Art. III, was added to our Constitution." (Emphasis added.)

Subsequent language in the opinion with reference to the Tenth District discloses it was not at all comparable to Districts 6 and 1 of the present plan. It was a district which could have been improved and made more compact. but was not of such a nature that "It would be absurd to claim that this district meets anybody's standard of compactness." The court did not find that the Tenth District was so lacking in compactness that it violated the constitutional provision, but its language infers the result would have been otherwise if the plan had contained shoestring districts. The opinion in *Preisler v. Hearnes* does not require or indicate that the plan now before us should be sustained. Here we deal with districts comparable to those held bad in *Doherty* and districting by a commission as in that case, not by the legislature.

A holding that the present senatorial redistricting is unconstitutional and that the state should be redistricted does not present any serious timetable problems in regard to holding the 1976 elections. We could provide that if a new redistricting plan is completed and filed by some date such as March 1, 1976, then the new plan would govern the 1976 elections and the Secretary of State would be directed to accept filings only on the basis of such new plan. If a new redistricting plan has not been completed and filed by March 1, 1976, the 1976 election would be held on the basis of presently existing districts and the Secretary of State would be directed to accept filings on and after March 1, 1976, on that basis. In such event, the new redistricting plan, when filed, would apply to and govern elections in 1978.

I would affirm the judgment of the circuit court. Accordingly, I dissent from the principal opinion.