**Kenneth PEARSON, et al., Appellants,**

v.

**Chris KOSTER, et al., Respondents.**

**Stan McClatchey, et al., Appellants,**

v.

**Robin Carnahan, et al., Respondents.**

Nos. SC 92200, SC 92203.

Supreme Court of Missouri,
En Banc.

Jan. 17, 2012.

---

Gerald P. Greiman, Spencer Fane Britt & Browne LLP, St. Louis, for the Voters in SC92200.

Jamie B. Landes, Lee's Summit, for the Voters in SC92203.

State Solicitor James R. Layton, Attorney General's Office in Jefferson City, and Edward D. Greim, Graves Bartle Marcus & Garrett LLC, in Kansas City, for State.

PER CURIAM.

Article III, section 45 of the Missouri Constitution establishes when the General Assembly must redistrict Missouri for the election of members to the United States House of Representatives, and that the districts "shall be composed of contiguous territory as compact and nearly equal in population as may be." Plaintiffs alleged in their petitions that the districts were not drawn "as compact . . . as may be," specifically referring to the redistricting map and the configuration of certain districts. Defendants filed a motion to dismiss for failure to state a claim or, in the alternative, a motion for judgment on the pleadings. The circuit court ruled, "[h]aving reviewed the pleadings, briefs, and points raised at oral argument and having considered only facts appearing in the pleadings, the court hereby grants both motions and dismisses both cases."

■ A motion to dismiss may not be sustained "if the facts alleged meet the elements of a recognized cause of action." *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 306 (Mo. banc 1993). The pleadings, including the map illustrating House districts 3 and 5, raise issues of fact concerning whether various districts, particularly House districts 3 and 5, are "composed of contiguous territory as compact . . . as may be." Mo. Const. art. III, sec. 45. The judgments are reversed, and the cases are remanded.

### I. Facts and Procedural History

■ Article III, section 45 of the Missouri Constitution was triggered when the results of the 2010 United States Census revealed that the population of the State of Missouri grew at a lower rate than the population of other states and Missouri would lose one member of its delegation to the United States House of Representatives. It is the responsibility of the Missouri General Assembly to draw new congressional election districts. The new districts will take effect for the 2012 election and remain in place for the next decade or until a Census shows that the dis-

tricts should change. While Missouri previously was composed of nine congressional districts, the General Assembly had to draw a new map that reduced the number of districts to eight.

In April 2011, both houses of the General Assembly approved a congressional redistricting map embodied in House Bill 193 ("the Map"). See Appendix A. Governor Jay Nixon vetoed the Map. Following the veto, the General Assembly voted to override the Governor's veto and adopted the Map on May 4, 2011.

Six Missouri citizens and qualified voters residing in various areas of the state brought an action in the Circuit Court of Cole County against Attorney General Chris Koster and Secretary of State Robin Carnahan, in her official capacity as the chief elections officer for the State, challenging the validity of the congressional redistricting plan. A second group of citizens and qualified voters filed an action in the Circuit Court of Cole County against Secretary Carnahan, seeking declaratory and injunctive relief. Collectively, both sets of plaintiffs (hereinafter "Plaintiffs") seek to invalidate the Map and prevent Secretary Carnahan from conducting elections in accordance with the map.

Defendants Koster and Carnahan answered the petitions. Defendant Koster filed a motion to dismiss for failure to state a claim or, alternatively, for judgment on the pleadings in response to the Pearson Plaintiffs' petition. Representative John J. Diehl and Senator Scott T. Rupp, the chairs of the state House and Senate redistricting committees that drew the Map, intervened as defendants in both cases. They filed an answer and a motion to dismiss or for judgment on the pleadings in both cases. Defendants Koster, Carnahan, and intervenors are referred to collectively as "Defendants."

After oral argument, but without conducting an evidentiary hearing or making any finding of facts, the circuit court dismissed both cases. The extent of its order and judgment reads:

> Defendant Attorney General Chris Koster, and intervenors in Case Nos. 11AC–CC00624 and 11AC–CC00752, have moved for judgment on the pleadings or, in the alternative, for dismissal for failure to state a claim. Having reviewed the pleadings, briefs, and points raised at oral argument, and having considered only facts appearing in the pleadings, the Court hereby GRANTS both motions and dismisses both cases.

## II. Analysis

### A. Count I: Compactness

Article III, section 45 of the Missouri Constitution sets out only three requirements for the redistricting of seats in Missouri for the United States House of Representatives. The districts "shall" be composed of "contiguous territory as compact and as nearly equal in population as may be." Mo. Const. art. III, sec. 45. The purpose of these requirements is "to guard, as far as practicable, under the system of representation adopted, against a legislative evil, commonly known as 'gerrymander,' and to require the Legislature to form districts, not only of contiguous, but of compact or closely united, territory." *State ex rel. Barrett v. Hitchcock*, 241 Mo. 433, 146 S.W. 40, 61 (1912). "[T]he provision requiring compactness of territory, subject, as it must be, to other more definitely expressed rules, may also, in application, be modified by the requirement of equality in population ... that 'compactness, being of less importance, may, to some extent, yield in aid of securing a nearer approach to equality of representation.'" *Id.* at 61 (internal citations omitted).

■ A claim that a district lacks compactness following redistricting is justiciable. "[C]ourts have jurisdiction and authority to pass upon the validity of legislative acts apportioning the state into senatorial or other election districts and to declare them invalid for failure to observe non-discretionary limitations imposed by the Constitution." *Preisler v. Doherty*, 365 Mo. 460, 284 S.W.2d 427, 431 (1955) (*Preisler I*); *see also Barrett*, 146 S.W. 40 (holding that the act of apportionment did not conform to the constitutional compactness requirement).

In *Preisler v. Kirkpatrick*, this Court articulated the appropriate standard of review for such claims in several different ways. *Preisler v. Kirkpatrick*, 528 S.W.2d 422 (Mo. banc 1975) (*Preisler III*). The Court upheld the redistricting map in that case, stating that the redistricting commission "made an *honest and good faith effort*" in drawing the districts as compact as may be. *Id.* at 426 (emphasis added). In the next sentence, though, the Court said, "We also find, and hold, that considering the overall, state-wide plan developed by the Commission the districts established *substantially comply* with the compactness requirement." *Id.* at 427 (emphasis added). Elsewhere in the opinion, *Preisler III* quotes *Preisler I*, in which the Court stated that the constitutional limitations must be "*wholly ignored and completely disregarded*" for a court to declare the act of redistricting unconstitutional. *Id.* at 426 (quoting *Preisler I*, 284 S.W.2d at 431) (emphasis added).

These standards are obviously inconsistent and most likely resulted in confusion below. Regardless of what language is used, three ideas are fundamental. First, redistricting is predominately a political question. Decisions must be made regarding a number of sensitive considerations to configure the various House districts. These maps could be drawn in multiple ways, all of which might meet the constitutional requirements. These decisions are political in nature and best left to political leaders, not judges. Second, compactness and numerical equality are mandatory. To the extent that they are achieved, numerous other constitutional problems are avoided. Third, compactness and numerical equality cannot be achieved with absolute precision. This is recognized by the "as may be" language used in article III, section 45.

While an appropriate standard of review must reflect deference to the predominate role of the General Assembly and the inability of anyone to draw compact districts with numerical precision, Missouri courts nonetheless must uphold the mandatory language of the constitution that the "districts **shall be** composed of contiguous territory as compact and as nearly equal in population as may be." Mo. Const. art. III, sec. 45 (emphasis added). The protection of this constitutional provision applies to each Missouri voter, in every congressional district. "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." *Burdick v. Takushi*, 504 U.S. 428, 441, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992) (internal citations omitted).

Both the "honest and in good faith" and the "completely disregard" standards resulting from the *Preisler* cases are subjective in nature. A subjective test is difficult to apply, especially in relation to the General Assembly, whose members' respective motives may be several and divergent. Equally troublesome is an attempt to apply a subjective test to a mandatory constitutional duty.

The "substantially comply" standard reflects the need to obey the constitutional requirements of contiguousness, compact-

ness, and numerical equality. It also recognizes that allowance must be made for precision that cannot be obtained in absolute numerical equality. It does not, however, improve upon the language of article III, section 45.

■■ Simply put, the applicable standard of review for a court in reviewing an article III, section 45 claim is the language of the constitution itself: whether the General Assembly divided Missouri into districts of "contiguous territory as compact and as nearly equal in population as may be." Mo. Const. art. III, sec. 45. As long as the districts comply with these constitutional requirements, the circuit court shall respect the political determinations of the General Assembly and allow for minimal and practical deviations required to preserve the integrity of the existing lines of our various political subdivisions.[1] *See State ex rel. Teichman v. Carnahan*, 357 S.W.3d 601 (Mo. banc 2012) (decided concurrently with this case); *Preisler v. Hearnes*, 362 S.W.2d 552, 556 (Mo. banc 1962) (*Preisler II*). Yet the duty to draw the district lines of a contiguous territory as compact and as nearly equal in population as may be is one that is mandatory and objective, not subjective.

■ Here, Plaintiffs have alleged that various districts, and the Map as a whole, violate the compactness requirement of article III, section 45. Districts 3 and 5 are alleged to be particularly suspect, as can be confirmed by any rational and objective consideration of their boundaries.[2] How-

ever, it is a question of fact, yet to be tried, whether those districts are "as compact and nearly equal in population *as may be.*" Mo. Const. art. III, sec. 45 (emphasis added). This Court makes no prejudgment on these issues, or on the compactness of other districts, other than to hold that Plaintiffs have stated a claim as to the compactness of the districts that is subject to proof and defenses in accordance with evidence as in any other lawsuit.

It was error for the trial court to grant judgment on the pleadings and dismiss Count I of both petitions.

## B. Count II: Equal Protection

The Pearson Plaintiffs claim that the Map constitutes unconstitutional partisan gerrymandering in that it deprives equal protection of rights guaranteed in article I, sections 1 and 2 of the Missouri Constitution and the 14th Amendment of the United States Constitution. These plaintiffs claim the Map infringes on the fundamental right to vote by diluting the voting power of members of the Democratic Party. The McClatchey Plaintiffs, on the other hand, claim only that the Map reflects bipartisan gerrymandering, in that the Map has the purpose and effect of preventing "competitive challenges to incumbents of both parties."

### i. The McClatchey Plaintiff's "Incumbent Protection" Claim

■■ The United States Supreme Court, when addressing the issue of justi-

---

1. The Missouri Constitution has historically recognized counties as "important governmental units, in which the people are accustomed to working together," and has provided for that policy to be considered in the redistricting process. *Preisler v. Hearnes*, 362 S.W.2d 552, 557 (Mo. banc 1962) (*Preisler II*).

2. In oral argument before the circuit court, counsel for the Attorney General stated

"[F]rankly, I'm not going to stand here and defend the compactness of District 5. District 5 seems to me to be problematic." Record at 15. Counsel went on to say that "[w]hat you have in District 3 is ... something that's *fairly* compact." *Id.* (emphasis added). "So four of the six [districts] *other than 3 and 5* are actually improvements in compactness...." Record at 16 (emphasis added).

ciability of political gerrymandering claims, has defined a claim of political gerrymandering as an act that would "operate to minimize or cancel out the voting strength of racial or political elements of the voting population." *Davis v. Bandemer,* 478 U.S. 109, 119, 106 S.Ct. 2797, 92 L.Ed.2d 85 (1986) (internal citations omitted). A partisan gerrymandering claim asserts that each political group in the State should have the same chance to elect representatives of its choice as any other political group—and one group has been denied this opportunity. This focus naturally precludes a claim of "bipartisan" gerrymandering, whereby a plaintiff claims each political party acted to foreclose the other party's legitimate chance to successfully elect adequate representatives. There is no constitutionally protected right to a district that favors either an incumbent or a challenger.

### ii. The Pearson Plaintiff's "Partisan Vote Dilution" Claim

The Pearson Plaintiffs, citing to *Armentrout v. Schooler,* 409 S.W.2d 138, 143 (Mo.1966), argue that political gerrymandering claims have been recognized as justiciable by Missouri courts. The Armentrout Court did note that "in a representative government[,] the people are entitled to equal representation," linking the equal protection clause to the right to vote. *Id.* But *Armentrout* is not on point. There, this Court held only that the equal protection clauses of the United States and Missouri constitutions require districts from which representatives are elected to be "substantially equal in population," so as to avoid vote dilution that would impair constitutional rights. *Id.* at 143–44. The kind of vote dilution at issue in *Armentrout*—dilution by disparate population in districts—is not at issue here.

A plurality of the United States Supreme Court recently voted to overrule its previous holding that political gerrymandering claims are justiciable, leaving the law in a state of flux. *Vieth v. Jubelirer,* 541 U.S. 267, 305–06, 124 S.Ct. 1769, 158 L.Ed.2d 546 (2004). Justice Kennedy, while concurring with the plurality that held partisan gerrymandering claims to be nonjusticiable, also stated that the possibility of judicial relief should not be foreclosed in cases claiming partisan gerrymandering because a "limited and precise rationale" may yet be found to correct an alleged constitutional violation. *Id.* at 306, 124 S.Ct. 1769 (concurring opinion). However, Justice Kennedy and the other members of the Supreme Court that would find a claim of partisan gerrymandering justiciable were unable to establish a standard for determining how to state a claim of partisan gerrymandering or reviewing such a claim if it is stated. *Id.* at 305–06, 124 S.Ct. 1769.[3] In a subsequent redistricting decision, *League of United Latin Am. Citizens v. Perry,* 548 U.S. 399, 413–14, 126 S.Ct. 2594, 165 L.Ed.2d 609 (2006) (*LULAC*), the Supreme Court was again unable to reach agreement on a substantive standard for review of such claims.

■ Here, the grievance Plaintiffs assert is that political motivations of various

---

**3.** This disagreement in *Vieth* led to five opinions. Justice Scalia filed a plurality opinion which would have found partisan gerrymandering claims not justiciable. Justices Stevens, Breyer and Souter, with Justice Ginsburg joining, filed dissenting opinions. Each dissenting judge would have held that partisan gerrymandering claims are justiciable, but their opinions set forth 3 different standards for determining whether a successful claim has been presented. Justice Kennedy filed an opinion agreeing with the dissenters that claims of partisan gerrymandering are justiciable, but nonetheless concurring in the judgment because in the absence of majority agreement on a standard no relief could be granted.

types caused Missouri's Congressional districts to be reconfigured so as to eliminate a Congressional district now held by a Democrat. In light of the Supreme Court's inability to state a clear standard, and because none of the varying standards proposed in either *Vieth, LULAC* or the other cited cases suggest that such evidence alone states a legally satisfactory claim of partisan gerrymandering, this Court is unable to find that Plaintiffs have shown an entitlement to relief at this time.

It was not error for the trial court to grant judgment on the pleadings and dismiss Count II of both petitions.

## C. Count III: "Good of the whole."

■ Article I, section 1 of the Missouri Constitution states that "all political power is vested in and derived from the people; that all government of right originates from the people, is founded upon their will only, and is instituted solely *for the good of the whole*." (Emphasis added). Article I, section 2 states that "all constitutional government is intended to promote *the general welfare* of the people." (Emphasis added). This is extremely important and meaningful language. These provisions shape the Missouri Constitution and guide the branches of government in passing, interpreting and applying effective law that is beneficial for the state of Missouri. The Pearson Plaintiffs, however, claim that these provisions establish rights that can be enforced through judicial action. They assert this language protects the right to vote and creates a cause of action when the right to vote is allegedly infringed upon.

This Court cited these provisions in *Armentrout*, 409 S.W.2d at 143. In that case, the Court found statutes that provided for the selection of city council members from legislative districts of unequal population unconstitutional in that they vi-

olated the equal protection clause. The Court used article I, sections 1 and 2 as guiding language in evaluating that equal protection claim, but did not create a new claim based on an act that allegedly was not for the "good of the whole" or the "general welfare" of the people of Missouri.

This Court has refused to find a basis for a suit in similar language of our Constitution. *See Comm. for Educ. Equal. v. State*, 294 S.W.3d 477, 488 (Mo. banc 2009) (*CEE*). In *CEE*, the language at issue was article IX, section 1(a) which stated: "[a] general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people...." *Id.* at 488. This introductory clause outlines the purpose and subject of Missouri's public education system. *Id.* There is no specificity or direction in the clause; therefore, the language was found to be "purely aspirational in nature." *Id.* at 488–89.

Article I, sections 1 and 2 are also aspirational in nature. The clauses describe the purpose and the goals of the Missouri government. There is no "specific directive or standard" for how the State must preserve or enhance the "good of the whole" or "the general welfare" of the citizens of Missouri. *CEE*, 294 S.W.3d at 488. As in *CEE*, the language in sections 1 and 2 concerns policy decisions, and "political choices are left to the discretion of the other branches of government." *Id.* at 489.

It was not error for the trial court to grant judgment on the pleadings and dismiss Count III of the Pearson Plaintiff's petition.

## D. Count IV: Right to Vote

■ The Pearson Plaintiffs added a new Count IV in their amended petition,

alleging that the Map constitutes "vote dilution" in violation of article I, section 25[4] and article VIII, section 2[5] of the Missouri Constitution. The Pearson Plaintiffs cite no separate law for this claim, relying on the general statements of this Court in *Armentrout* and *Preisler I* to construct their argument that the right to vote, as established by the Missouri Constitution, protects the right of members of a political party to not have their votes "diluted" by a map that rearranges districts and eliminates a seat for one political party. However, as stated above, this Court has not recognized a "vote dilution" claim outside of a situation where districts are unequal in population. It was not error for the trial court to dismiss Count IV.

### III. Conclusion

A question of fact exists as to whether the districts were drawn as compact as may be. These cases are reversed and remanded to the circuit court. Because time is of the essence, the circuit court is directed to conduct its hearing and to enter its judgment no later than February 3, 2012, so that the General Assembly will have time to redistrict the state, if necessary. It is presumed that governmental entities will fulfill their duties in a timely manner for the 2012 elections. *See State ex rel. Nixon v. Blunt,* 135 S.W.3d 416, 420 (Mo. banc 2004).

Any post-opinion motions here must be filed at or before 12:00 noon Thursday, January 19, 2012, and any response thereto by 12:00 noon Friday, January 20, 2012.

BRECKENRIDGE, FISCHER, STITH and PRICE, JJ., and ELLIS and MITCHELL, Sp.J., and PARRISH, Sr.J., concur.

TEITELMAN, C.J., RUSSELL and DRAPER, JJ., not participating.

---

4. "No power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." Mo. Const. art. I, sec. 25.

5. "All citizens of the United States, including occupants of soldiers' and sailors' homes, over the age of eighteen who are residents of this state and of the political subdivision in which they offer to vote are entitled to vote at all elections by the people." Mo. Const. art. VIII, sec. 2.